Grady MATTHEWS *v.* STATE of Arkansas

CA CR 96-637                                    940 S.W.2d 498

Court of Appeals of Arkansas
Division II
Opinion delivered March 12, 1997

*Maxie G. Kizer*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

JOHN B. ROBBINS, Chief Judge. Appellant Grady Matthews was charged with capital felony murder in the shooting death of Don Wyrick. Appellant was convicted as an accomplice to first-degree murder and was sentenced to twenty years in the Arkansas Department of Correction. Appellant contends on appeal that the evidence is insufficient to support his conviction. We affirm.

■ In reviewing the sufficiency of the evidence in criminal cases, we consider the evidence in the light most favorable to the appellee and affirm if there is substantial evidence to support the verdict. *Boyd v. State*, 54 Ark. App. 17, 922 S.W.2d 357 (1996). Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty and precision, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Davis v. State*, 325 Ark. 96, 925 S.W.2d 768 (1996). Circumstantial evidence alone may constitute substantial evidence when every other reasonable hypothesis consistent with innocence is excluded. *Walker v. State*, 324 Ark. 106, 918 S.W.2d 172 (1996). Once the evidence is determined to be sufficient to go to the jury, the question of whether the circumstantial evidence excludes any other hypothesis consistent with innocence is for the jury to decide. *Williams v. State*, 325 Ark. 432, 930 S.W.2d 297 (1996). On appellate review, it is permissible for this court to consider only that evidence that supports the guilty verdict. *Choate v. State*, 325 Ark. 251, 925 S.W.2d 409 (1996).

Arkansas Code Annotated section 5-10-102 (Repl. 1993) defines murder in the first degree as follows:

(a) A person commits murder in the first degree if:

(1) Acting alone or with one (1) or more other persons, he commits or attempts to commit a felony, and in the course of and in the furtherance of the felony or in immediate flight therefrom, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life; or

(2) With a purpose of causing the death of another person, he causes the death of another person. . . .

Each conspirator or participant in the execution or attempted execution of a crime is responsible for everything done that follows directly as a probable and natural consequence. *Johnson v. State*, 252 Ark. 1113, 482 S.W.2d 600 (1972). An accomplice is one who, with the purpose of promoting or facilitating the commission of an offense, either solicits, advises, encourages, or coerces another person to commit the offense, aids, agrees to aid, or attempts to aid the other person in planning or committing the offense, or, having a legal duty to prevent the offense, fails to make a proper effort to prevent the commission of the offense. Ark. Code Ann. § 5-2-403 (Repl. 1993).

The evidence presented at trial showed that on May 19, 1995, Don Wyrick was shot and killed at a residence in Pine Bluff known as "The Hill." Several witnesses testified that the residence was a gambling house where people came to play cards and shoot dice. Several witnesses testified that, on the night in question, four young men entered the residence and put stocking caps over their faces. The young men displayed handguns, stated that it was a "stickup," and demanded that everyone get down on the floor. John Moore testified that he recognized the appellant as he entered the house and identified him in court as one of the young men involved in the robbery.

The evidence indicated that the young men entered the house through the living room and, while two of them guarded people in the living room, two of the suspects went into the dining room where a gaming table was set up. Several witnesses testi-

fied that the victim refused to get on the floor and began wrestling with the appellant for the gun the appellant was holding. The testimony indicated that after the victim fought for appellant's gun he was shot by Patrick Davis, one of the appellant's accomplices. The victim died as a result of two gunshot wounds.

Marcus James, one of the appellant's accomplices, was called on behalf of the State. James testified that he, the appellant, Patrick Davis, and Derrick Pridgeon planned to rob the gambling house and take everyone's money. James testified that he, the appellant, and the two others met on the night in question about 10:30 or 11:00 p.m. The young men organized their guns and later left to perform the robbery. James identified State's exhibit #5 as the .380 pistol that Derrick Pridgeon used during the robbery. James also identified State's exhibit #1 as the .25 pistol that the appellant had during the robbery, which was found after the robbery on the floor under the victim.

James testified that the four of them entered the house, and he and Pridgeon stopped in the living room while Davis and the appellant went on back into the dining room area. James testified that appellant and the victim began struggling over the gun that appellant was holding. James testified that Patrick Davis then shot his gun.

The appellant testified in his own defense at trial. He admitted that they had planned for more than a week to rob the gambling house. Appellant testified that State's exhibit #1 was the .25 pistol that he used during the robbery. He testified that he knew the victim because the victim was his girlfriend's stepfather, and when he entered the dining room he believed the victim recognized him. The appellant testified that the victim attempted to take his gun from him and a struggle ensued. Appellant testified that he fell to the floor during the fight and heard two shots. He did not see who fired the shots because he was trying to hide his face after his stocking cap had come off. The appellant, Davis, and Pridgeon then fled the house, while James remained in the home hiding under a bed.

The expert testimony in this case indicated that the victim was shot once in the left chest area. A second shot hit the victim

in the right shoulder area. Two bullets were recovered from the victim's body that expert testimony indicated were fired from a .38, the same type weapon Davis was carrying on the night in question. Dr. William Sturner, the chief medical examiner with the Arkansas State Crime Laboratory, testified that the victim in this case was killed as a result of the two gunshot wounds.

■ The appellant specifically argues that the evidence was insufficient to show that he or one of his codefendants shot the victim on the night in question. However, Marcus James testified that Patrick Davis fired his weapon when the victim was killed. Both the appellant and James testified that Davis was carrying a .38-caliber handgun on the night in question, and it was .38-caliber bullets that were recovered from the victim's body. The testimony of the other witnesses also indicated that only the appellant and his codefendants had weapons drawn on the night in question. There was both direct testimony and circumstantial evidence to indicate that it was Davis, appellant's accomplice, who killed the victim. There is substantial evidence to support the appellant's conviction.

Affirmed.

GRIFFEN and ROAF, JJ., agree.