OPINION
 

 By the Court, Rose, J.:
 

 Appellant Anthony Thomas Bolden and four other masked men broke into Silvia Rascon’s apartment and committed a number of crimes against the occupants. A jury convicted Bolden of burglary while in possession of a deadly weapon, home invasion while in possession of a deadly weapon, first-degree kidnapping with use of a deadly weapon, second-degree kidnapping with use of a deadly weapon, two counts of robbery with use of a deadly weapon, and conspiracy to commit robbery and/or kidnapping.
 
 [1]
 
 In this appeal, Bolden alleges that the district court committed error during jury selection under
 
 Batson
 
 v. Kentucky
 
 [2]
 
 and that the State failed to present sufficient evidence to support the jury’s verdicts with respect to all the charged offenses, failed to prove that the kidnapping charges were not incidental to the robbery charges, and failed to present sufficient evidence in support of the deadly weapon enhancements.
 

 
 *911
 
 Although we reject Bolden’s specific contentions, in resolving his sufficiency of the evidence challenge, we have found it necessary to determine whether the jury could have properly based its verdicts for the specific intent crimes of burglary and kidnapping on the State’s theory of vicarious coconspirator liability. We conclude that the jury was not properly instructed on this theory of vicarious coconspirator liability and that the error cannot be held harmless under the circumstances of this case. Therefore, we reverse Bolden’s conviction with respect to the counts concerning the specific intent crimes of burglary and first- and second-degree kidnapping, and we remand this matter for further proceedings consistent with this opinion. We affirm Bolden’s conviction of the remaining counts.
 

 FACTS
 

 On December 7, 2002, at approximately 2 a.m., Bolden and four other masked men kicked in the door of Silvia Rascon’s apartment. Rascón, her three children and a friend were present. The men apparently broke into the apartment looking for drugs and money. With the aid of knives, box cutters or other sharp objects, one or more of the men separately moved Rascón and her oldest daughter from room to room for the purposes of locating items to steal and sexually molesting the daughter. Police arrived and apprehended all of the intruders, three of whom had exited the residence in possession of property stolen from Ras-cón and her family. Police found Bolden inside the apartment, hiding under a bedroom mattress. Ironically, these men were misinformed concerning the presence of either drugs or considerable financial lucre.
 

 The State charged Bolden and his compatriots with burglary, home invasion, first-degree kidnapping of Rascón, second-degree kidnapping of Rascon’s daughter, robbery of Rascón, robbery of Rascon’s son, and conspiracy to commit robbery and/or kidnapping. All of the charges, save the conspiracy count, were accompanied by deadly weapon enhancements. This timely appeal followed.
 

 DISCUSSION
 

 Sufficiency of the evidence
 

 Bolden contends that the State failed to present sufficient evidence to convict him on any of the charges. In short, he claims that the entire body of proof against him established no more than his mere presence during the events in question. In this, the district court instructed the jury that “mere presence” of the defendant, or his “knowledge that a crime is being committed,” is insufficient to
 
 *912
 
 establish guilt without proof that the defendant was “a participant and not merely a knowing spectator.”
 
 [3]
 

 More specifically, Bolden asserts that the State failed to prove his participation in a conspiracy; tailed to prove the intent elements of the home invasion, robbery, burglary, first-degree kidnapping and second-degree kidnapping charges; failed to prove that the kidnapping charges were not incidental to the robbery charges; and failed to present sufficient evidence in support of the deadly weapon enhancements.
 

 The relevant inquiry in reviewing the sufficiency of the evidence supporting a jury’s verdict is ‘ ‘ ‘whether, after viewing the evidence in the light most favorable to the prosecution,
 
 any
 
 rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.’ ”
 
 [4]
 
 Moreover, “circumstantial evidence alone may support a conviction.”
 
 [5]
 
 In resolving Bolden’s contentions, we have reviewed the evidence supporting the jury’s findings of guilt with respect to each of the charged offenses. Additionally, with respect to the nonconspiracy offenses, we have reviewed the evidence supporting the jury’s verdicts under the three separate theories of guilt alleged by the State for those offenses.
 

 Conspiracy to commit robbery and/or kidnapping
 

 The State alleged that Bolden and the other defendants met with each other and willfully, unlawfully, and feloniously conspired and agreed to commit robbery and/or kidnapping. Additionally, the State alleged that in furtherance of the conspiracy the defendants in fact committed the crimes of robbery and kidnapping. Nevada law defines a conspiracy as “an agreement between two or more persons for an unlawful purpose.’ ’
 
 [6]
 
 ‘ ‘A person who knowingly does any act to further the object of a conspiracy, or otherwise participates therein, is criminally liable as a conspirator . . . ,”
 
 [7]
 
 “Evidence of a coordinated series of acts furthering the underlying offense is sufficient to infer the existence of an agreement and
 
 *913
 
 support a conspiracy conviction.”
 
 [8]
 
 “However, absent an agreement to cooperate in achieving the purpose of a conspiracy, mere knowledge of, acquiescence in, or approval of that purpose does not make one a party to conspiracy.”
 
 [9]
 

 Here, the evidence presented at trial established that Bolden and his cohorts forcibly entered the Rascón apartment armed with switchblades, box cutters or other sharp objects and robbed the occupants. Some of the men moved two of the victims around in the residence for purposes that were both incidental and not incidental to the robberies themselves. The State presented overwhelming circumstantial and direct evidence that Bolden participated in the joint enterprise to acquire drugs and money; that he entered into an agreement to rob the Rascón family; that he was not merely a spectator in the Rascón apartment, as he claims; and that when the police arrived, Bolden was found hiding under a mattress. To the extent that Bolden contends that the evidence fails to support his participation in the conspiracy, his contention is without merit. The State presented more than sufficient evidence to support Bolden’s conviction for conspiracy to commit robbery and/or kidnapping.
 

 The burglary, home invasion, robbery, and kidnapping charges
 

 With respect to the burglary, home invasion, robbery and kidnapping charges, the State alleged three alternative theories of criminal liability: (1) that Bolden directly committed the offenses, (2) that he aided and abetted his cohorts, or (3) that he was vicariously responsible for all of the acts of his cohorts done in aid of the conspiracy. When alternate theories of criminal liability are presented to a jury and all of the theories are legally valid, a general verdict can be affirmed even if sufficient evidence supports only one of the theories.
 
 [10]
 
 When any one of the alleged theories is legally erroneous, however, reversal of a general verdict is required — except under the very narrowly defined circumstances discussed below — regardless of the legal and factual sufficiency of the other theories.
 
 [11]
 
 Accordingly, we turn to an analysis of the legal and evidentiary support for each of the State’s theories of liability.
 

 
 *914
 

 Aiding and abetting and direct participation
 

 Bolden contends that the jury convicted him primarily upon an aiding and abetting theory. A person aids and abets the commission of a crime if he aids, promotes, encourages or instigates, by act or advice, the commission of such crime with the intention that the crime be committed.
 
 [12]
 
 Relying upon our decision in
 
 Sharma
 
 v. State,
 
 [13]
 
 Bolden argues that the State failed to prove that he specifically intended to aid and abet the crimes committed at the Rascón residence.
 

 In
 
 Sharma,
 
 we held,
 

 [I]n order for a person to be held accountable for the specific intent crime of another under an aiding or abetting theory of principal liability, the aider or abettor must have knowingly aided the other person with the intent that the other person commit the charged crime.
 
 [14]
 

 Bolden’s reliance on
 
 Sharma
 
 is misplaced for several reasons. First, robbery and home invasion are not specific intent crimes. Second, the State proceeded on two additional alternate theories of criminal liability, direct participation as a principal and perpetration of the offenses in furtherance of a conspiracy. Third, the State presented sufficient evidence for the jury to convict Bolden under all of its theories of culpability. Fourth, per
 
 Sharma,
 
 the district court correctly instructed the jury concerning the State’s aiding and abetting theory:
 

 All persons concerned in the commission of a crime who either directly and actively commit the act constituting the offense or who knowingly and with criminal intent aid and abet in its commission or, whether present or not, who advise and encourage its commission, with the intent that the crime be committed, are regarded by the law as principals in the crime thus committed and are equally guilty thereof.
 
 [15]
 

 
 *915
 
 As noted above, Bolden was one of five masked men who entered a private residence by force, committed the robberies, and moved two of the victims around in the residence. The State provided ample circumstantial evidence of direct participation in, and the specific intent to aid and abet, all of the nonconspiracy crimes committed that morning.
 
 [16]
 
 Bolden was not, as he now reasons, “merely present” or a “mere spectator.” We therefore conclude that substantial evidence supports the State’s direct participation and aiding and abetting theories of home invasion, burglary, robbery and kidnapping.
 
 [17]
 

 Coconspirator liability
 

 Our conclusion that there is sufficient evidentiary and legal support for Bolden’s conviction of the charged crimes as a principal and as an aider and abettor does not end our inquiry. Bolden’s sufficiency argument, coupled with his reliance on this court’s holding in
 
 Sharma,
 
 calls into question the legal viability of the State’s remaining theory of vicarious coconspirator liability. As noted above, if any one of the theories of criminal liability alleged by the State is legally erroneous, reversal of a verdict that fails to specify the precise theory upon which the verdict is based is generally required regardless of the legal and factual sufficiency of the other theories. Despite our conclusion that Bolden’s conviction of the nonconspiracy crimes is legally and factually sufficient under the State’s theories of principal and aiding and abetting liability, we must now determine whether there is a valid legal and factual basis supporting Bolden’s conviction of the nonconspiracy crimes under the State’s theory of vicarious coconspirator liability.
 

 In this respect, the district court gave the following instruction:
 

 Each member of a criminal conspiracy is liable for each act and bound by each declaration of every other member of the conspiracy if the act or the declaration is in furtherance of the object of the conspiracy.
 

 The act of one conspirator pursuant to or in furtherance of the common design of the conspiracy is the act of all conspirators. Every conspirator is legally responsible for an act of a co-conspirator that follows as one of the
 
 probable and natural consequences of the object of the conspiracy
 
 even if that was
 
 *916
 
 not intended as part of the original plan and even if he was not present at the time of commission of such act.
 

 (Emphasis added.)
 

 In
 
 Garner v. State,
 
 this court approved the above-quoted “probable and natural consequences” doctrine, which exposes conspirators to criminal liability for any act so long as the act was committed in furtherance of the conspiracy as a natural or probable consequence of the unlawful agreement.
 
 [18]
 
 However,
 
 Garner
 
 restricted the doctrine considerably by holding that “[t]his rule does not constitute a
 
 per se
 
 basis for holding an accomplice to one crime liable for a related crime by the principal simply because the related crime was foreseeable.”
 
 [19]
 
 To do so, we concluded, “would be ‘to base criminal liability only on a showing of negligence rather than criminal intent.’”
 
 [20]
 
 Consequently,
 
 Garner
 
 concluded that if “the relationship between the defendant’s acts and the charged crime is too attenuated, the State must provide ‘some showing of specific intent to aid in, or specific knowledge of, the crime charged.’ ”
 
 [21]
 

 Garner,
 
 however, did not discuss vicarious co-conspirator and accomplice liability as discrete concepts.
 

 As previously noted, in
 
 Sharma v. State,
 
 this court overruled
 
 Gamer
 
 to the extent that a defendant could be held accountable for the specific intent crime of another, under an aiding or abetting theory of liability, without proof that he specifically intended to aid the other in the commission of the charged crime.
 
 [22]
 
 We stated,
 

 [The natural and probable consequences] doctrine has been harshly criticized by most commentators ... as both incongruous and unjust because it imposes accomplice liability solely upon proof of foreseeability or negligence when typically a higher degree of mens rea is required of the principal. It permits criminal liability to be predicated upon negligence even when the crime involved requires a different state of mind. Having reevaluated the wisdom of the doctrine, we have concluded that its general application in Nevada to specific intent crimes is unsound precisely for that reason: it permits conviction without proof that the accused possessed the state of mind required by the statutory definition of the crime.
 

 ... As the Supreme Court of New Mexico observed in rejecting the doctrine for similar reasons, the doctrine thus allows a defendant to be convicted for crimes the defendant may have been able to foresee but never intended.
 

 
 *917
 
 . . . Because the natural and probable consequences doctrine permits a defendant to be convicted of a specific intent crime where he or she did not possess the statutory intent required for the offense, we hereby disavow and abandon the doctrine. It is not only inconsistent with more fundamental principles of our system of criminal law, but is also inconsistent with those Nevada statutes that require proof of a specific intent to commit the crime alleged.
 

 Accordingly, we . . . hold that in order for a person to be held accountable for the specific intent crime of another under an aiding or abetting theory of principal liability, the aider or abettor must have knowingly aided the other person with the intent that the other person commit the charged crime.
 
 [23]
 

 Thus,
 
 Sharma
 
 addressed the natural and probable consequences doctrine only with respect to a theory alleging that a defendant could be held criminally liable for the specific intent crime of another under an aiding and abetting theory of principal liability. The question left unanswered in
 
 Gamer
 
 and
 
 Sharma,
 
 but presented in this case, is whether a theory of vicarious coconspirator liability based upon the natural and probable consequences doctrine is a legally viable theory in this state.
 

 Nearly 60 years ago in
 
 Pinkerton v. United States,
 
 the United States Supreme Court defined coconspirator liability in terms of reasonable foreseeability and reaffirmed the concept that a conspiracy and the completion of the substantive offense are two distinct criminal acts.
 
 [24]
 
 The Court concluded,
 

 The criminal intent to do the act is established by the formation of the conspiracy. Each conspirator instigated the commission of the crime. The unlawful agreement contemplated precisely what was done. It was formed for the purpose. The act done was in execution of the enterprise. The rule which holds responsible one who counsels, procures, or commands another to commit a crime is founded on the same principle. That principle is recognized in the law of conspiracy when the overt act of one partner in crime is attributable to all. . . . If [the overt act] can be supplied by the act of one conspirator, we fail to see why the same or other acts in furtherance of the conspiracy are likewise not attributable to the others for the
 
 *918
 
 purpose of holding them responsible for the substantive offense.
 

 A different case would arise if the substantive offense committed by one of the conspirators was not in fact done in furtherance of the conspiracy, did not fall within the scope of the unlawful project, or was merely a part of the ramifications of the plan which could not be reasonably foreseen as a necessary or natural consequence of the unlawful agreement.
 
 [25]
 

 Pinkerton
 
 applies to federal criminal proceedings and thus federal courts have employed the rule.
 
 [26]
 
 The individual states, however, are not obligated to follow
 
 Pinkerton.
 
 The Nevada Legislature has not adopted the
 
 Pinkerton
 
 rule, but a number of states have addressed the issue by judicial decision. Several states have embraced the rule and permit defendants to be held liable for the criminal acts of a coconspirator so long as the crime was foreseeable and committed in furtherance of the conspiracy.
 
 [27]
 
 Nonetheless, the
 
 Pinkerton
 
 rule has garnered significant disfavor. Concerns respecting the ramifications of the rule arose shortly after the opinion issued:
 

 In the final analysis the
 
 Pinkerton
 
 decision extends the wide limits of the conspiracy doctrine to the breaking-point and opens the door to possible new abuses by over-zealous public prosecutors. While membership in a conspiracy may well be evidence for the jury’s consideration in holding others than the direct actor guilty, it should not be sufficient, in the absence of some further showing of knowledge, acquiescence, aid or assistance, to convict one conspirator for another’s criminal act.
 
 [28]
 

 Others have criticized the rule as well. “Under the better view, one is not an accomplice to a crime merely because that crime was committed in furtherance of a conspiracy of which he is a member, or because that crime was a natural and probable consequence of
 
 *919
 
 another offense as to which he is an accomplice.”
 
 [29]
 
 The drafters of the Model Penal Code have similarly rejected the
 
 Pinkerton
 
 view, commenting that the “law would lose all sense of just proportion” if by virtue of his crime of conspiracy a defendant was “held accountable for thousands of additional offenses of which he was completely unaware and which he did not influence at all.”
 
 [30]
 

 The Washington Supreme Court has rejected
 
 Pinkerton
 
 as an inaccurate reflection of state law.
 
 [31]
 
 A Washington criminal statute provides liability for criminal conspiracy but is silent respecting vicarious liability for coconspirators. The Washington court concluded that vicarious liability of coconspirators, if any, must be based on a state accomplice liability statute, which requires knowledge of the crime charged.
 
 [32]
 
 Therefore, the court held that liability based on foreseeability alone is incompatible with its state law.
 

 The Arizona Supreme Court has also rejected the
 
 Pinkerton
 
 rule, holding that conspiratorial liability does not extend to separate criminal acts of coconspirators when a particular coconspirator is not an accomplice or principal to those crimes, even though he may be guilty of conspiracy.
 
 [33]
 
 That court noted that its holding “simply prevents a conspirator, who is not also an accomplice, from being held liable for a potentially limitless number of criminal acts which, though later determined to be ‘foreseeable,’ are at the time of their commission totally beyond the conspirator’s knowledge and control.”
 
 [34]
 

 New York has similarly considered and rejected the
 
 Pinkerton
 
 view, as explained in
 
 People v.
 
 McGee:
 

 In rejecting the notion that one’s status as a conspirator standing alone is sufficient to support a conviction for a substantive offense committed by a coconspirator, it is noted that the Legislature has defined the conduct that will render a person criminally responsible for the act of another. Conspicuously absent from section 20.00 of the Penal Law is reference to one who conspires to commit an offense. That omission cannot be supplied by construction. Conduct that will support a conviction for conspiracy will not perforce give rise to ac-cessorial liability. True, a conspirator’s conduct in many instances will suffice to establish liability as an accomplice, but
 
 *920
 
 the concepts are, in reality, analytically distinct. To permit mere guilt of conspiracy to establish the defendant’s guilt of the substantive crime without any evidence of further action on the part of the defendant, would be to expand the basis of accomplice liability beyond the legislative design.
 

 The crime of conspiracy is an offense separate from the crime that is the object of the conspiracy. Once an illicit agreement is shown, the overt act of any conspirator may be attributed to other conspirators to establish the offense of conspiracy and that act may be the object crime. But the overt act itself is not the crime in a conspiracy prosecution; it is merely an element of the crime that has as its basis the agreement. It is not offensive to permit a conviction of conspiracy to stand on the overt act committed by another, for the act merely provides corroboration of the existence of the agreement and indicates that the agreement has reached a point where it poses a sufficient threat to society to impose sanctions. But it is repugnant to our system of jurisprudence, where guilt is generally personal to the defendant, to impose punishment, not for the socially harmful agreement to which the defendant is a party, but for substantive offenses in which he did not participate.
 
 [35]
 

 The natural and probable consequences doctrine under Nevada law
 

 Nevada case law addressing the principles of conspiracy is limited to the following concepts.
 
 [36]
 
 As we noted above, a conspiracy is generally defined as “an agreement between two or more persons for an unlawful purpose.”
 
 [37]
 
 “A person who knowingly does any act to further the object of a conspiracy, or otherwise participates therein, is criminally liable as a conspirator . . . ,”
 
 [38]
 
 “Evidence of a coordinated series of acts furthering the underlying offense is sufficient to infer the existence of an agreement and support a conspiracy conviction.”
 
 [39]
 
 “However, absent an agreement to cooperate in achieving the purpose of a conspiracy, mere knowledge of, acquiescence in, or approval of that purpose does not make one a party to conspiracy.’ ’
 
 [40]
 

 
 *921
 
 We have never expressly adopted the
 
 Pinkerton
 
 rule and our discussion of coconspirator liability has been limited. In
 
 State v. Cushing,
 
 a
 
 pre-Pinkerton
 
 decision, the defendants were charged with performing illegal abortions.
 
 [41]
 
 The State did not contend that the defendants themselves performed the abortions, but that they were accessories before the fact and chargeable as principals because they “entered into a common plan or scheme” to perform the abortions.
 
 [42]
 
 This court recognized in
 
 Cushing
 
 that where a person enters into a common plan or scheme he may be held criminally liable as an accessory for unintended acts if “in the ordinary course of things [they were] the natural or probable consequence of such [a] common plan or scheme.’ ’
 
 [43]
 

 In
 
 McKinney v. Sheriff,
 
 McKinney challenged the sufficiency of the evidence supporting an indictment for murder, which was committed during the course of a robbery.
 
 [44]
 
 McKinney argued that he was unaware of and did not participate in the murder and thus there was no probable cause to support the murder charge.
 
 [45]
 
 In rejecting his claim, this court stated that the fact that McKinney’s cohorts deviated from their agreed-upon plan by committing the murder did not absolve McKinney of liability.
 
 [46]
 
 “Where the purpose of the conspiracy is to commit a dangerous felony, each member runs the risk of having the venture end in homicide .... Hence each is guilty of murder if one of them commits homicide in the perpetration . . . of an agreed-upon robbery. . . .”
 
 [47]
 

 Like the New York court in
 
 McGee,
 
 our overarching concern in
 
 Sharma
 
 centered on the fact that the natural and probable consequences doctrine regarding accomplice liability permits a defendant to be convicted of a specific intent crime where he or she did not possess the statutory intent required for the offense.
 
 [48]
 
 We are of the view that vicarious coconspirator liability for the specific intent crimes of another, based on the natural and probable consequences doctrine, presents the same problem addressed in
 
 Sharma,
 
 and we conclude that Sharma’s rationale applies with equal force under the circumstances of the instant case. To convict Bolden of burglary and kidnapping, the State was required to prove under Nevada law that he had the specific intent to commit those offenses. Holding otherwise would allow the State to sidestep the statutory specific intent required to prove those offenses.
 

 
 *922
 
 The overriding factor in our decision to reject the natural and probable consequences doctrine for coconspirator liability respecting specific intent crimes is the absence of a statutory basis for it. Our statutes lack a comprehensive statutory definition or explanation of coconspirator liability. Nevada distinguishes parties as principals or accessories and by statute outlines the criminal liability of both. NRS 195.010 classifies parties as principals and accessories. NRS 195.020 defines criminal liability as a principal:
 

 Every person concerned in the commission of a felony, gross misdemeanor or misdemeanor, whether he directly commits the act constituting the offense, or aids or abets in its commission, and whether present or absent; and every person who, directly or indirectly, counsels, encourages, hires, commands, induces or otherwise procures another to commit a felony, gross misdemeanor or misdemeanor is a principal, and shall be proceeded against and punished as such. The fact that the person aided, abetted, counseled, encouraged, hired, commanded, induced or procured, could not or did not entertain a criminal intent shall not be a defense to any person aiding, abetting, counseling, encouraging, hiring, commanding, inducing or procuring him.
 

 Additionally, NRS 199.480 sets forth the penalties for conspiracy offenses. These statutes are silent respecting the parameters of coconspirator vicarious liability.
 
 [49]
 

 NRS 195.020 was codified in 1912 and 1929. Given the age of the statute, and a lack of legislative history, we cannot say that the Legislature intended the statute to extend principal liability for a specific intent crime based on the natural and probable consequences theory permitted by
 
 Pinkerton.
 
 The power to define crimes and penalties lies exclusively within the power and authority of the Legislature.
 
 [50]
 
 No statutory underpinning for the
 
 Pinkerton
 
 rule exists in Nevada. In the absence of statutory authority providing otherwise, we conclude that a defendant may not be held criminally liable for the specific intent crime committed by a coconspir-ator simply because that crime was a natural and probable consequence of the object of the conspiracy. To prove a specific intent crime, the State must show that the defendant actually possessed the requisite statutory intent.
 

 Although we refuse to adopt the natural and probable consequences doctrine in general, our decision is limited to vicarious co-conspirator liability based on that doctrine for specific intent
 
 *923
 
 crimes only. The mental state required to commit a general intent crime does not raise the same concern as that necessary to commit a specific intent crime. General intent is “the intent to do that which the law prohibits. It is not necessary for the prosecution to prove that the defendant intended the precise harm or the precise result which eventuated.”
 
 [51]
 
 On the other hand, specific intent is “the intent to accomplish the precise act which the law prohibits.”
 
 [52]
 
 To hold a defendant criminally liable for a specific intent crime, Nevada requires proof that he possessed the state of mind required by the statutory definition of the crime.
 
 [53]
 
 Although we affirm Bolden’s conviction for the general intent crimes of home invasion and robbery, we conclude that in future prosecutions, vicarious coconspirator liability may be properly imposed for general intent crimes only when the crime in question was a “reasonably foreseeable consequence” of the object of the conspiracy. We caution the State that this court will not hesitate to revisit the doctrine’s applicability to general intent crimes if it appears that the theory of liability is alleged for crimes too far removed and attenuated from the object of the conspiracy.
 

 We conclude that the district court understandably but erroneously instructed the jury that Bolden could be found guilty of the specific intent crimes of burglary and first- and second-degree kidnapping as long as the commission of those offenses was a natural and probable consequence of the conspiracy, and even if Bolden never intended the commission of those crimes. We further conclude, however, that the error is applicable only with respect to Bolden’s conviction of the specific intent crimes of burglary and kidnapping and does not require reversal of his conviction of the general intent crimes of home invasion and robbery.
 

 Harmless error
 

 We next address whether the error noted above is subject to harmless error review and, if so, whether the error was in fact harmless.
 

 Where, as here, a jury delivers a general verdict that could have been based on either a legally valid or legally invalid ground, the verdict may not stand because a reviewing court cannot discern the ground upon which the jury based its verdict.
 
 [54]
 
 The United States Supreme Court, however, has never addressed whether harmless
 
 *924
 
 error analysis is available in such cases.
 
 [55]
 
 In
 
 Keating v. Hood,
 
 the Ninth Circuit Court of Appeals concluded that “[t]here is a limited exception to the principle: reversal may not be required if ‘it is
 
 absolutely certain’
 
 that the jury relied upon the legally correct theory to convict the defendant.”
 
 [56]
 
 We conclude that the absolute certainty rule approved in
 
 Keating
 
 is appropriate where, as here, a general verdict could have been based on either a legally valid or legally invalid ground, and we adopt the rule.
 

 As discussed above, the evidence sufficiently supports the State’s alternative theories of direct participation and aider and abettor liability. Nonetheless the instruction on coconspirator liability improperly allowed the jury to find Bolden criminally liable for the specific intent crimes of burglary and kidnapping under a theory of vicarious liability that erased the statutory mens rea element required for those specific intent offenses. Because the jury returned a general verdict, whether or not the jury rested its decision on this invalid ground is not discernible; we can only speculate as to the basis for the jury’s decision. Therefore, we cannot conclude with absolute certainty that the jury did not find Bolden guilty of the burglary and kidnapping offenses based on the erroneous instruction.
 
 [57]
 
 Accordingly, we reverse his convictions for burglary, first-degree kidnapping, and second-degree kidnapping, and we remand for further proceedings consistent with this opinion.
 
 [58]
 

 Batson challenge
 

 Bolden argues that the State dismissed minority jurors in violation of
 
 Batson v. Kentucky.
 

 [59]
 

 In
 
 Batson,
 
 the United States Supreme Court held that “the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race.”
 
 [60]
 
 The Court established a three-step analysis to review a prosecutor’s peremptory challenges for racial discrimination.
 
 [61]
 
 First, the defendant must establish a prima facie case of purposeful discrimination; second, the State must provide a race-neutral explanation for its
 
 *925
 
 challenge; and third, “[i]f a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination.”
 
 [62]
 

 Batson’s
 
 second step “does not demand an explanation that is persuasive, or even plausible.’ ’
 
 [63]
 
 With regard to step three, this court gives great deference to the trial court’s evaluation of whether purposeful discrimination exists.
 
 [64]
 

 Bolden lodged objections to the State’s exercise of its second and seventh peremptory challenges against African-American jurors. Following the State’s seventh challenge, the district court held a hearing outside the presence of the jury and determined that the State provided race-neutral reasons for its dismissal of both prospective jurors.
 

 Bolden alleges that he demonstrated a pattern of discrimination by the State based upon its prior dismissal of another prospective minority juror. However, the State was not required to present an explanation for the earlier strike if it provided suitable race-neutral reasons for the subsequent strikes.
 
 [65]
 

 The State justified its second challenge based upon the prospective juror’s dissatisfaction with police officials for whom he had been previously employed.
 
 [66]
 
 It based its seventh challenge upon the prospective juror’s belief that a family member, her husband, was wrongly convicted on a charge of burglary, one of the charges at issue against Bolden.
 

 We conclude that the State provided nonpretextual and race-neutral explanations for the exercise of its peremptory challenges and, thus, Bolden failed to establish a pattern of discrimination.
 
 [67]
 

 CONCLUSION
 

 Although sufficient evidence supports Bolden’s convictions for the specific intent offenses of burglary and kidnapping under the State’s alternative theories of direct participation and aiding and abetting liability, we must reverse these convictions because under the particular facts of this case, the jury’s general verdict precludes us from concluding with absolute certainty that the jury did not
 
 *926
 
 find Bolden guilty of these offenses based on the State’s alleged theory of coconspirator liability. We affirm Bolden’s remaining convictions. Accordingly, we affirm Bolden’s conviction in part, reverse it in part, and remand this matter for further proceedings consistent with this opinion.
 

 Becker, C. J., Maupin, Gibbons, Douglas, Hardesty and Parraguirre, JJ., concur.
 

 [1]
 

 The district court imposed a series of concurrent sentences for the separate counts, ranging from 35 to 156 months imprisonment on the home invasion and burglary charges, to life imprisonment with the possibility of parole for first-degree kidnapping. The district court also imposed equal, consecutive terms in connection with the charges alleging use of a deadly weapon in the commission of the offense.
 

 [2]
 

 476 U.S. 79 (1986).
 

 [3]
 

 See Brooks
 
 v.
 
 State,
 
 103 Nev. 611, 613-14, 747 P.2d 893, 894-95 (1987) (giving an aiding and abetting instruction does not justify refusing a properly worded mere presence instruction if the defendant has presented “some evidence” supporting a mere presence theory).
 

 [4]
 

 Koza v. State,
 
 100 Nev. 245, 250, 681 P.2d 44, 47 (1984) (quoting
 
 Jackson
 
 v.
 
 Virginia,
 
 443 U.S. 307, 319 (1979)).
 

 [5]
 

 Hernandez v. State,
 
 118 Nev. 513, 531, 50 P.3d 1100, 1112 (2002).
 

 [6]
 

 Doyle
 
 v.
 
 State,
 
 112 Nev. 879, 894, 921 P.2d 901, 911 (1996),
 
 overruled on other grounds by Kaczmarek
 
 v.
 
 State,
 
 120 Nev. 314, 91 P.3d 16 (2004).
 

 [7]
 

 Id.
 

 [8]
 

 Garner
 
 v.
 
 State,
 
 116 Nev. 770, 780, 6 P.3d 1013, 1020 (2000),
 
 overruled in part by Sharma
 
 v.
 
 State,
 
 118 Nev. 648, 56 P.3d 868 (2002).
 

 [9]
 

 Id.
 

 [10]
 

 Phillips v. State,
 
 121 Nev. 591, 597, 119 P.3d 711, 716 (2005) (citing
 
 Griffin
 
 v.
 
 United States,
 
 502 U.S. 46, 56-57 (1991);
 
 Turner v. United States,
 
 396 U.S. 398, 420 (1970)).
 

 [11]
 

 Id.
 
 (citing
 
 Yates v. United States,
 
 354 U.S. 298, 311-12 (1957),
 
 overruled on other grounds by Burks v. United States,
 
 437 U.S. 1 (1978);
 
 Stromberg v. California,
 
 283 U.S. 359, 368 (1931)).
 

 [12]
 

 NRS 195.020.
 

 [13]
 

 118 Nev. 648, 56 P.3d 868 (2002).
 

 [14]
 

 Id. at 655, 56 P.3d at 872.
 
 Sharma
 
 overturned
 
 Mitchell v. State,
 
 114 Nev. 1417, 971 P.2d 813 (1998), and
 
 Garner
 
 v.
 
 State,
 
 116 Nev. 770, 6 P.3d 1013 (2000), to the extent those cases held that a defendant could be held accountable for the specific intent crime of another, under an aiding or abetting theory of principal liability, without proof that the abettor specifically intended to aid the other in the commission of the charged crime. 118 Nev. at 652-55, 56 P.3d at 870-72.
 

 [15]
 

 Bolden does not challenge this instruction. Even if he could demonstrate that the instruction did not precisely track the
 
 Sharma
 
 decision, any error was harmless.
 
 See Chapman
 
 v.
 
 California,
 
 386 U.S. 18, 24 (1967) (“[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.”).
 

 [16]
 

 Of the nonconspiracy crimes charged, only burglary and kidnapping required a showing of specific intent.
 

 [17]
 

 We also reject Bolden’s contentions that the State failed to prove that the offenses here involved the possession or use of deadly weapons. Further, we note that Bolden does not address whether his convictions for burglary and home invasion are redundant. We therefore express no opinion on that issue.
 

 [18]
 

 116 Nev. at 779-83, 6 P.3d at 1019-21.
 

 [19]
 

 Id.
 
 at 782, 6 P.3d at 1021.
 

 [20]
 

 Id.
 
 (quoting
 
 United States
 
 v.
 
 Greer,
 
 467 F.2d 1064, 1069 (7th Cir. 1972)).
 

 [21]
 

 Id.
 
 (quoting
 
 Greer, 467
 
 F.2d at 1069).
 

 [22]
 

 118 Nev. at 655, 56 P.3d at 872.
 

 [23]
 

 Id.
 
 at 654-55, 56 P.3d at 871-72 (quotation marks and footnotes omitted).
 

 [24]
 

 328 U.S. 640 (1946).
 
 Pinkerton
 
 recognized two exceptions to this general principle. “One is where the agreement of two persons is necessary for the completion of the substantive crime and there is no ingredient in the conspiracy which is not present in the completed crime.”
 
 Id.
 
 at 643. The other “is where the definition of the substantive offense excludes from punishment for conspiracy one who voluntarily participates in another’s crime.’ ’
 
 Id.
 

 [25]
 

 Id.
 
 at 647-48.
 

 [26]
 

 See, e.g., U.S. v. Silvestri,
 
 409 F.3d 1311 (11th Cir. 2005);
 
 U.S.
 
 v.
 
 Si,
 
 343 F.3d 1116 (9th Cir. 2003);
 
 U.S.
 
 v.
 
 Curtis,
 
 324 F.3d 501 (7th Cir. 2003);
 
 U.S.
 
 v.
 
 Newsome,
 
 322 F.3d 328 (4th Cir. 2003);
 
 U.S. v. Wade,
 
 318 F.3d 698 (6th Cir. 2003);
 
 U.S. v. Navarrete-Barron,
 
 192 F.3d 786 (8th Cir. 1999).
 

 [27]
 

 See Matthews
 
 v.
 
 State,
 
 940 S.W.2d 498 (Ark. Ct. App. 1997);
 
 State v. Walton,
 
 630 A.2d 990 (Conn. 1993);
 
 State
 
 v.
 
 Tyler,
 
 840 P.2d 413 (Kan. 1992);
 
 Martinez
 
 v.
 
 State,
 
 413 So. 2d 429 (Fla. Dist. Ct. App. 1982);
 
 Everritt
 
 v.
 
 State,
 
 588 S.E.2d 691, 693 (Ga. 2003);
 
 State v. Harnois,
 
 853 A.2d 1249 (R.I. 2004);
 
 Barnes
 
 v.
 
 State, 56
 
 S.W.3d 221 (Tex. App. 2001).
 

 [28]
 

 Note,
 
 Vicarious Liability for Criminal Offenses of Co-conspirators,
 
 56 Yale L.J. 371, 378 (1947).
 

 [29]
 

 Wayne R. LaFave & Austin W. Scott, Jr.,
 
 Criminal Law
 
 § 6.8, at 587 (2d ed. 1986).
 

 [30]
 

 Model Penal Code § 2.06 cmt. 6(a), at 307 (1985).
 

 [31]
 

 State
 
 v.
 
 Stein,
 
 27 P.3d 184, 187-89 (Wash. 2001).
 

 [32]
 

 Id.
 
 at 188-89.
 

 [33]
 

 See
 
 Evanchyk
 
 v.
 
 Stewart,
 
 47 P.3d 1114, 1118 (Ariz. 2002);
 
 State ex rel. Woods
 
 v.
 
 Cohen,
 
 844 P.2d 1147, 1148-51 (Ariz. 1992).
 

 [34]
 

 Cohen,
 
 844 P.2d at 1151.
 

 [35]
 

 People
 
 v.
 
 McGee,
 
 399 N.E.2d 1177, 1181-82 (N.Y. 1979) (citations omitted).
 

 [36]
 

 As we noted in
 
 Garner,
 
 in Nevada “[t]here appears to be no comprehensive statutory definition of conspiracy.”
 
 Garner,
 
 116 Nev. at 780, 6 P.3d at 1020.
 

 [37]
 

 Doyle,
 
 112 Nev. at 894, 921 P.2d at 911.
 

 [38]
 

 Id.
 

 [39]
 

 Garner, 116 Nev. at 780, 6 P.3d at 1020.
 

 [40]
 

 Id.
 

 [41]
 

 61 Nev. 132, 136, 120 P.2d 208, 211 (1941).
 

 [42]
 

 Id.
 
 at 136-37, 120 P.2d at 211.
 

 [43]
 

 Id.
 
 at 148, 120 P.2d at 216.
 

 [44]
 

 93 Nev. 70, 560 P.2d 151 (1977).
 

 [45]
 

 Id.
 
 at 71-72, 560 P.2d at 151-52.
 

 [46]
 

 Id.
 
 at 72, 560 P.2d at 152.
 

 [47]
 

 Id.
 
 (citations and quotation marks omitted).
 

 [48]
 

 118 Nev at 655, 56 P.3d at 872.
 

 [49]
 

 To the extent the “counsels, encourages” language in the statute might apply to conspiracy vicarious liability, the statute is ambiguous.
 

 [50]
 

 See Sheriff v. Luqman,
 
 101 Nev. 149, 153, 697 P.2d 107, 110 (1985).
 

 [51]
 

 Black’s Law Dictionary
 
 810 (6th ed. 1990).
 

 [52]
 

 Id.
 

 [53]
 

 See Sharma,
 
 118 Nev. at 654, 56 P.3d at 872.
 

 [54]
 

 See Stromberg
 
 v.
 
 California,
 
 283 U.S. 359, 368 (1931);
 
 Keating v. Hood,
 
 191 F.3d 1053, 1062 (9th Cir. 1999),
 
 overruled on other grounds by Payton v. Woodford,
 
 346 F.3d 1204, 1217 n.18 (9th Cir. 2003).
 

 [55]
 

 See Becht v. U.S.,
 
 403 F.3d 541, 546-47 (8th Cir. 2005).
 

 [56]
 

 Keating,
 
 191 F.3d at 1063 (quoting
 
 Ficklin v. Hatcher, 177
 
 F.3d 1147, 1152 (9th Cir. 1999)).
 

 [57]
 

 Id.; see also Neder v. United States,
 
 527 U.S. 1, 18 (1999).
 

 [58]
 

 Because we conclude that the conviction on the kidnapping counts must be reversed, we need not reach Bolden’s contentions regarding the incidental nature of the kidnappings.
 

 [59]
 

 476 U.S. 79 (1986).
 

 [60]
 

 Id.
 
 at 89.
 

 [61]
 

 Id.
 
 at 96-98.
 

 [62]
 

 Purkett v. Elem,
 
 514 U.S. 765, 767 (1995).
 

 [63]
 

 Id.
 
 at 767-68.
 

 [64]
 

 Hernandez
 
 v.
 
 New York,
 
 500 U.S. 352, 364 (1991) (plurality opinion).
 

 [65]
 

 See Doyle,
 
 112 Nev. at 889 n.2, 921 P.2d at 908 n.2.
 

 [66]
 

 See
 
 Clem
 
 v.
 
 State,
 
 104 Nev. 351, 355, 760 P.2d 103, 106 (1988) (holding that “ [association with the criminal justice system is a facially neutral reason to challenge veniremen”),
 
 overruled on other grounds by Zgombic v. State,
 
 106 Nev. 571, 798 P.2d 548 (1990).
 

 [67]
 

 See Doyle,
 
 112 Nev. at 889-90, 921 P.2d at 908-09.