DOUGLAS DISPOSAL, INC., APPELLANT, *v.* WEE HAUL, LLC; ROBERT HAIGHT; SCOTT HOYLE; MITCHELL B. CROCKETT; NJ ENTERPRISES, INC.; JOHN INNES; AND NANCY INNES, RESPONDENTS.

No. 44862

November 8, 2007            170 P.3d 508

*Jeffrey K. Rahbeck*, Zephyr Cove, for Appellant.

*Hager & Hearne* and *Treva J. Hearne* and *Robert R. Hager*, Reno, for Respondents.

*Mark Jackson*, District Attorney, and *Cynthea A. Gregory*, Deputy District Attorney, Douglas County, for Amicus Curiae Douglas County.

554

Before the Court EN BANC.[1]

## OPINION

By the Court, SAITTA, J.:

In this appeal, we examine whether a county is authorized, under its governmental police powers, to regulate construction waste, and particularly whether Douglas County properly enacted an ordinance granting an exclusive franchise to appellant Douglas Disposal, Inc. (Disposal), for construction waste collection and disposal within the county. Since we conclude that construction waste regulation falls within the County's police powers, we next examine whether an exclusive franchise agreement for construction waste collection and disposal violates the dormant Commerce Clause of the United States Constitution.[2] Because we conclude that such an agreement comports with the dormant Commerce Clause, we reverse the district court's order denying the franchisee injunctive relief, and remand the matter for the district court to grant an injunction precluding respondents from collecting and hauling construction waste within the franchise area.

### BACKGROUND FACTS

In 1996, Douglas County enacted an ordinance, under which it entered into an amended franchise agreement with Disposal providing an exclusive privilege to collect and dispose of all solid waste within the East Fork Township of the county. Thereafter, respondents Wee Haul, LLC, and NJ Enterprises, Inc., independent

---

[1]THE HONORABLE JAMES W. HARDESTY, Justice, voluntarily recused himself from participation in the decision of this matter.

[2]Douglas County filed an amicus brief asserting that it had proper authority to grant an exclusive franchise agreement and that the agreement did not violate the dormant Commerce Clause.

contractors that haul away non-putrescible construction waste,[3] also began operating their respective businesses within the exclusive franchise area. Wee Haul and NJ Enterprises provided boxes at construction sites for their customers to fill with construction waste, which Wee Haul and NJ Enterprises then hauled to local landfills, as well as to landfills in California. The County, however, had not authorized Wee Haul and NJ Enterprises to haul construction waste within its boundaries.

Seeking to prevent Wee Haul and NJ Enterprises from collecting and disposing of construction waste, Disposal brought an action requesting injunctive relief and damages, based on its exclusive franchise agreement. Thereafter, Disposal filed a "Motion for Judgment on the Pleadings and/or for Partial Summary Judgment." In their opposition to the motion, Wee Haul and NJ Enterprises argued that the exclusive franchise agreement's language was ambiguous and that the agreement did not include construction waste. Thus, Wee Haul and NJ Enterprises argued, Disposal did not have an exclusive franchise to pick up and haul construction waste within the township. In addition, Wee Haul and NJ Enterprises further argued in their pretrial statement that even if the court determined that the agreement included construction waste, the agreement was unenforceable because it violated the dormant Commerce Clause and because the County exceeded its police powers in authorizing the exclusive franchise.[4] Disposal countered, arguing the merits of the dormant Commerce Clause violation.

The district court found that non-putrescible "construction debris is not injurious to the public health, and therefore falls outside [of] the County's police power." It further concluded that an exclusive franchise agreement to collect and dispose of construction waste places an excessive burden on interstate commerce in violation of the dormant Commerce Clause. For those reasons, the district court denied Disposal's request for an injunction and damages.[5] Disposal appeals.

## DISCUSSION

In this opinion, we consider whether construction waste poses public health and safety concerns such that the County may, under

---

[3]"Putrescible" is defined as "subject to putrefaction" which is the "[p]artial decomposition of organic matter by microorganisms, producing foul-smelling matter." *Webster's II New College Dictionary* 922 (2005).

[4]In answering the complaint, respondents did not assert as an affirmative defense that the agreement was invalid for constitutional reasons.

[5]We note that Disposal sought injunctive relief and damages in its complaint and later filed a "Motion for Judgment on the Pleadings and/or for Partial Summary Judgment." Apparently, the district court treated the entire matter as a request for a preliminary injunction.

its police powers, enter into an exclusive franchise agreement for the collection and disposal of construction waste. We also determine whether such an agreement violates the dormant Commerce Clause.

Disposal raises four arguments: (1) that Wee Haul and NJ Enterprises waived their constitutionally based defenses by failing to assert them in their answers as affirmative defenses; (2) that the County has the authority to grant an exclusive franchise for collection and disposal of waste, including construction waste; (3) that the agreement explicitly grants Disposal an exclusive franchise to collect and dispose of construction waste;[6] and (4) that the agreement does not violate the dormant Commerce Clause. With the exception of the waiver argument, we agree.

*Standard of review*

This court reviews a district court order denying injunctive relief for abuse of discretion.[7] However, to the extent that the review involves the construction of a contract, the standard of review is de novo.[8] Likewise, this court reviews the constitutionality of statutes de novo.[9] We have previously recognized that " '[s]tatutes are presumed to be valid, and the burden is on the challenger to make a clear showing of their unconstitutionality.' "[10]

*Alleged waiver pursuant to NRCP 8(c)*

Disposal asserts that Wee Haul and NJ's constitutional defenses, that the exclusive franchise agreement violated the dormant Commerce Clause and that the County exceeded its police power, are affirmative defenses that the district court should not have considered because Wee Haul and NJ Enterprises did not affirmatively plead these as defenses.[11]

An affirmative defense is an argument or assertion of fact that, if true, will defeat the plaintiff's claim even if all allegations in the

---

[6]The district court did not address this issue. Therefore, we need not reach the issue. *See, e.g., American Home Assurance Co. v. Dist. Ct.,* 122 Nev. 1229, 1244 n.51, 147 P.3d 1120, 1130 n.51 (2006).

[7]*Number One Rent-A-Car v. Ramada Inns,* 94 Nev. 779, 780, 587 P.2d 1329, 1330 (1978).

[8]*NOLM, LLC v. County of Clark,* 120 Nev. 736, 739, 100 P.3d 658, 661 (2004).

[9]*Sheriff v. Burdg,* 118 Nev. 853, 857, 59 P.3d 484, 486 (2002).

[10]*Id.* (quoting *Childs v. State,* 107 Nev. 584, 587, 816 P.2d 1079, 1081 (1991) (alteration in original)).

[11]*See* NRCP 8(c).

complaint are true.[12] Generally, NRCP 8(c) provides that an affirmative defense must be pleaded in the answer or it is waived. However, even if not properly pleaded, an affirmative defense may be tried by consent or when fairness warrants consideration of the affirmative defense and the plaintiff will not be prejudiced by the district court's consideration of it.[13]

Here, although Wee Haul and NJ Enterprises did not assert any affirmative defenses in their answers, they raised the constitutional issues in their opposition to Disposal's "Motion for Judgment on the Pleadings and/or for Partial Summary Judgment." Although Disposal objected that Wee Haul and NJ Enterprises had not raised the constitutional arguments in their answer, Disposal addressed the merits of the constitutional issues in its reply. We conclude that Disposal had notice of the constitutional arguments and was thereafter able to fully argue the merits of them.[14] Accordingly, the district court properly considered the constitutional arguments in rendering its decision.

### Construction waste poses public health and safety concerns

The district court determined that non-putrescible construction waste was not injurious to the public health and that its regulation therefore fell outside of the County's police powers. We disagree.

We reject the district court's determination that construction waste does not pose public health and safety concerns.[15] To the contrary, in addition to the possibility that such waste could contain materials adverse to human health, including asbestos exposure, construction waste poses other safety hazards by potentially creating conditions that may cause fire, or may cause the collapse of the debris and materials, may create animal habitats, or may cre-

---

[12]*Clark Cty. Sch. Dist. v. Richardson Constr.*, 123 Nev. 382, 168 P.3d 87 (2007) (adopting test for determining what defenses fall under the "catchall" provision in NRCP 8(c)); *see also Black's Law Dictionary* 451 (8th ed. 2004); NRCP 8(c).

[13]NRCP 15(b); *Ivory Ranch v. Quinn River Ranch*, 101 Nev. 471, 473, 705 P.2d 673, 675 (1985); *Schwartz v. Schwartz*, 95 Nev. 202, 204-05, 591 P.2d 1137, 1139 (1979).

[14]NRCP 15(b); *see also Schwartz*, 95 Nev. at 205, 591 P.2d at 1139; *Williams v. Cottonwood Cove Dev. Co.*, 96 Nev. 857, 861, 619 P.2d 1219, 1221 (1980) (holding that, when the opposing party had the opportunity to respond and did respond to the motion, no prejudice attached).

[15]*See City of Spokane v. Carlson*, 436 P.2d 454, 456-58 (Wash. 1968) (holding that an ordinance enacted by Spokane, which provided that Spokane was the exclusive trash services provider to its residents, including disposal of inorganic refuse, was a valid exercise of Spokane's police power for health, sanitation, or safety).

ate other safety hazards. Certainly, excessive quantities of construction debris can create a public nuisance, subjecting it to county regulation.[16] Accordingly, as set forth below, regulation of construction waste falls within the County's police power.

*The County has the authority to grant an exclusive franchise over waste collection and disposal*

Police power confers upon the states the ability to enact laws in order to protect the safety, health, morals, and general welfare of society.[17] Municipalities have the right to exercise their police powers and enact ordinances related to the protection of the public health, even if their ordinances interfere with private property rights.[18] The Nevada Legislature enacted NRS Chapter 444 to protect the public health and welfare, to prevent water and air pollution, the spread of disease, and the creation of nuisances, to conserve natural resources, and to enhance the beauty and quality of the environment.[19] To that end, NRS 444.510(1) imposes on local governments[20] the obligation to "develop a plan to provide for a solid waste management system" that adequately provides for the management and disposal of solid waste within counties, cities, and towns, including "construction waste."[21] Additionally, NRS 244.187(3)[22] and NRS 244.188(1)(b)[23] authorize counties to grant

---

[16]*See City of Chicago v. Krisjon Const. Co.*, 617 N.E.2d 21, 26 (Ill. Ct. App. 1993) (determining that excessive quantities of construction debris and inefficient and improper methods of its disposal result in scenic blight, cause serious hazards to public health and safety, and create public nuisances).

[17]*Kirkpatrick v. Dist. Ct.*, 119 Nev. 66, 70, 64 P.3d 1056, 1059 (2003).

[18]*Reduction Company v. Sanitary Works*, 199 U.S. 306, 323-24 (1905); *see Tri-State Rubbish, Inc. v. Waste Management, Inc.*, 998 F.2d 1073, 1082 (1st Cir. 1993) (concluding that a municipality could lawfully regulate waste control for public health reasons, even if the ensuing regulations "severely limit[ed] the value of an ongoing business"); *State v. Park*, 42 Nev. 386, 392, 178 P. 389, 391 (1919).

[19]NRS 444.440.

[20]While NRS 444.510 expressly refers to "municipalities," NRS 444.470 defines "[m]unicipality" as "any county and any city or town."

[21]*See* NRS 444.490 (defining "solid waste" to include construction waste).

[22]NRS 244.187 provides, in relevant part,

A board of county commissioners may, to provide adequate, economical and efficient services to the inhabitants of the county and to promote the general welfare of those inhabitants, displace or limit competition in any of the following areas:

. . . .

3. Collection and disposal of garbage and other waste.

[23]NRS 244.188(1) provides,

Except as otherwise provided [(when these powers are provided to an unincorporated town or within a general improvement district)], a board of

exclusive franchises to any person or entity to provide services for the "[c]ollection and disposal of garbage and *other waste*."[24] Further, we conclude that the term "other waste" is broad and properly encompasses solid waste, including construction waste. Therefore, counties may include construction waste in exclusive franchise agreements.

Here, the County, in accordance with NRS 444.510, developed a plan for its solid waste management by granting Disposal an exclusive franchise agreement to collect and dispose of all solid waste, including industry construction waste, within the franchise area. The County's plan included an exclusive franchise agreement as authorized under NRS 244.187(3) and NRS 244.188(1)(b). Accordingly, the County was authorized to enact an ordinance granting an exclusive franchise agreement to Disposal for the collection and disposal of waste, including construction waste.

*The County's exclusive franchise agreement does not violate the dormant Commerce Cause*

Disposal argues that the district court erred when it found that the exclusive franchise agreement violated the dormant Commerce Clause. We agree.

### The dormant Commerce Clause

The Commerce Clause of the United States Constitution gives Congress the power to regulate interstate commerce.[25] In addition to granting regulatory power to Congress, the Commerce Clause "has long been understood to have a 'negative' aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce."[26] This " ' "negative" or "dormant" aspect of the Commerce Clause prohibits States from advancing their own commercial interests by curtailing the

---

county commissioners may, outside the boundaries of incorporated cities and general improvement districts:

  (a) Provide those services set forth in NRS 244.187 on an exclusive basis or, by ordinance, adopt a regulatory scheme for controlling the provision of those services or controlling development in those areas on an exclusive basis; or

  (b) Grant an exclusive franchise to any person to provide those services.

[24]NRS 244.187(3) (emphasis added).

[25]U.S. Const. art. I, § 8, cl. 3.

[26]*Oregon Waste Systems, Inc. v. Department of Environmental Quality of Ore.*, 511 U.S. 93, 98 (1994).

movement of articles of commerce, either into or out of the state.' ''[27]

A statute or ordinance may be struck down under the dormant aspect of the Commerce Clause if it discriminates ''on its face[,] in practical effect,'' or through its purpose.[28] Thus, two levels of analysis are used to determine whether such a violation has occurred. First, a court must consider whether the statutes or government contracts facially discriminate against interstate commerce.[29] If they do not facially discriminate against interstate commerce, the court must determine whether, in application, they unduly burden interstate commerce.[30]

### Discrimination against interstate commerce

A law or government contract violates the ''dormant'' aspect of the Commerce Clause if it facially discriminates against interstate commerce.[31] Here, the district court correctly found that the agreement does not facially discriminate against interstate commerce. We note that the challenged agreement does not overtly prevent out-of-state enterprises from competing in local markets.[32] Consequently, the issue is whether the exclusive franchise agreement places an undue burden on interstate commerce.

### Undue burden on interstate commerce

Disposal argues that the district court erred when it found that the exclusive franchise agreement unduly burdened interstate commerce. We agree.

The United States Supreme Court held in *Pike v. Bruce Church, Inc.* that statutes advancing a legitimate local interest and applying equally to in-state and out-of-state (interstate) commerce will be upheld ''unless the burden imposed on [interstate] commerce is

---

[27]*National Solid Wastes Management Ass'n v. Meyer*, 63 F.3d 652, 657 (7th Cir. 1995) (quoting *Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dept. of Natural Resources*, 504 U.S. 353, 359 (1992)).

[28]*Hughes v. Oklahoma*, 441 U.S. 322, 336 (1979); *see Ben Oehrleins & Sons & Daughter v. Hennepin County*, 115 F.3d 1372, 1383 (8th Cir. 1997).

[29]*Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

[30]*Id.*

[31]*United Haulers Assn., Inc. v. Oneida-Herkimer Solid Waste Management Authority*, 550 U.S. 330, 338 (2007).

[32]*Cf. Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 35, 39 (1980).

clearly excessive in relation to the putative local benefits."[33] The *Pike* Court set forth three criteria to consider when determining whether a statute imposes an undue burden on interstate commerce: (1) the nature of the state's or municipality's interest in enacting the legislation, (2) the extent of the burden on interstate commerce created by the legislation, and (3) whether the interest in enacting the legislation could have been served by other legislation that does not impact interstate commerce as much.[34]

### The County's interest

In balancing the *Pike* factors, we are mindful that the state is afforded great deference when it legislates matters regarding the protection of its citizens' health and well-being.[35] And the exercise of police powers may justify discrimination against interstate commerce that would not be otherwise justified by a local government's economic interests.[36] Accordingly, courts reviewing such regulations and contracts will generally not " 'second-guess the empirical judgments of lawmakers concerning the utility of legislation.' "[37]

The California Court of Appeal, when reviewing legitimate local purposes of exclusive waste disposal agreements, has determined that an exclusive franchise agreement is a "proper exercise of the municipality's police power, and serves an important public interest by protecting against the hazards of indiscriminate or unsafe waste disposal."[38] As the Second Circuit Court of Appeals has explained, municipalities have a "legitimate—indeed, compelling—interest[ ] that [is] served by [a] waste management

---

[33]397 U.S. 137, 142 (1970).

[34]*Id.*; *see also Pacific Northwest Venison Producers v. Smitch*, 20 F.3d 1008, 1013-17 (9th Cir. 1994); *Waste Mgmt. v. Biagini Waste Reduction*, 74 Cal. Rptr. 2d 676, 683-84 (Ct. App. 1998).

[35]*See Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 756 (1985) (observing that the states "traditionally have had great latitude under their police powers to legislate" as to their citizens' health and safety).

[36]*See U & I Sanitation v. City of Columbus*, 205 F.3d 1063, 1070 (8th Cir. 2000); *USA Recycling, Inc. v. Town of Babylon*, 66 F.3d 1272, 1288 (2d Cir. 1995).

[37]*Pacific Northwest*, 20 F.3d at 1017 (quoting *CTS Corp. v. Dynamics Corp. of America*, 481 U.S. 69, 92 (1987)); *see Biagini*, 74 Cal. Rptr. 2d at 683 (" 'When a state statute regarding safety matters applies equally to interstate and intrastate commerce, the courts are generally reluctant to invalidate [it] even if [it] may have some impact on interstate commerce.' " (alterations in original) (quoting *People v. Niebauer*, 263 Cal. Rptr. 287, 292 (Ct. App. 1989))).

[38]*Biagini*, 74 Cal. Rptr. 2d at 683.

program.''[39] Because waste management, including the collection and disposal of construction waste, undoubtedly concerns the health and safety of a community, the laws that regulate these matters may place somewhat greater burdens on interstate commerce than might otherwise be acceptable.[40] Accordingly, we conclude that the County has a legitimate if not compelling interest in regulating construction waste through an exclusive franchise.

### Disproportionate burden on interstate commerce

The dormant Commerce Clause may be used to invalidate legislation if the legislation imposes a disproportionate burden on interstate commerce.[41] If an exclusive franchise agreement to collect and dispose of garbage restricts interstate and intrastate commerce equally, the agreement does not unduly burden interstate commerce, and thus, the agreement does not violate the dormant Commerce Clause.[42] The dormant Commerce Clause does not protect any particular interstate business interest;[43] it protects the flow of commerce between the states so that no single business interest, intrastate or interstate, unduly burdens that flow. As the Second Circuit Court of Appeals concluded, a municipality's takeover of the local garbage market will ''not impose any different burdens on nonlocal [haulers] as opposed to local garbage haulers . . . [if] the takeover will result in only one garbage hauler collecting commercial garbage [in the town], and [it] will not necessarily increase or decrease interstate commerce in garbage collection.''[44]

Here, no unequal burden on interstate commerce has been created. The County properly granted an exclusive franchise to Disposal and thereby prohibited any other in-state or out-of-state garbage collector from collecting and disposing of waste, including construction waste, within the township. Thus, Wee Haul and NJ Enterprises are no more affected by the agreement than any other

---

[39]*USA Recycling*, 66 F.3d at 1288.

[40]*Pike*, 397 U.S. at 143; *see also General Motors Corp. v. Tracy*, 519 U.S. 278, 306 (1997) (''[L]egitimate state pursuit of such interests [is] compatible with the Commerce Clause, which was 'never intended to cut the States off from legislating on all subjects relating to the health, life, and safety of their citizens, though the legislation might indirectly affect the commerce of the country.' '' (quoting *Huron Cement Co. v. Detroit*, 362 U.S. 440, 443-44 (1960))).

[41]*USA Recycling*, 66 F.3d at 1287.

[42]*Biagini*, 74 Cal. Rptr. 2d at 684.

[43]*International Truck and Engine Corp. v. Bray*, 372 F.3d 717, 727 (5th Cir. 2004).

[44]*USA Recycling*, 66 F.3d at 1287.

intrastate or interstate firms. Thus, the exclusive franchise agreement here does not place any additional burden on interstate commerce than it does on intrastate commerce.

### Alternative measures

The last consideration in determining whether an agreement places an undue burden on interstate commerce is whether some alternative measure could have accomplished the franchise agreement's purpose. This criterion focuses not on whether the franchise agreement is the least burdensome alternative, but on whether the total effect of the statute or ordinance was so slight as to not outweigh the national interest in interstate commerce.[45] In examining this factor, we do not determine which feasible alternative is the best means to achieve a state's legitimate objective.[46]

Here, Wee Haul and NJ Enterprises did not argue that an available, less burdensome alternative existed. Thus, we decline to engage in an unnecessary separate analysis of the County's exercise of its police powers on this ground.

### CONCLUSION

The district court properly considered the constitutional defenses raised by respondents in their opposition to appellant's "Motion for Judgment on the Pleadings and/or for Partial Summary Judgment." We conclude that the County may constitutionally regulate construction waste under its police powers, since construction waste poses public health and safety concerns. We also conclude that Douglas County appropriately exercised its police power in granting the exclusive franchise agreement to collect and dispose of construction waste to Douglas Disposal. Further, Douglas County's grant of an exclusive franchise to Disposal does not impermissibly violate the dormant Commerce Clause. Accordingly, we reverse the district court's order denying the injunction and remand this matter to the district court for proceedings consistent with this opinion.

MAUPIN, C. J., GIBBONS, PARRAGUIRRE, DOUGLAS and CHERRY, JJ., concur.

---

[45]See Biagini, 74 Cal. Rptr. 2d at 683.

[46]Id.; Bibb v. Navajo Freight Lines, 359 U.S. 520, 524 (1959).