135 Nev., Advance Opinion 39

IN THE COURT OF APPEALS OF THE STATE OF NEVADA

DERRICK POOLE,
Appellant,
vs.
NEVADA AUTO DEALERSHIP
INVESTMENTS, LLC, A NEVADA
LIMITED LIABILITY COMPANY, D/B/A
SAHARA CHRYSLER; AND
COREPOINTE INSURANCE
COMPANY,
Respondents.

No. 74808-COA

**FILED**

SEP 05 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK



Appeal from a district court final order and summary judgment in a deceptive trade practices action. Eighth Judicial District Court, Clark County; Nancy L. Allf, Judge.

*Reversed and remanded.*

Law Offices of George O. West III and George O. West III, Las Vegas; Law Offices of Craig B. Friedberg and Craig B. Friedberg, Las Vegas, for Appellant.

Moran Brandon Bendavid Moran and Jeffery A. Bendavid and Stephanie J. Smith, Las Vegas, for Respondents.

---

BEFORE GIBBONS, C.J., TAO and BULLA, JJ.

19-37098

*OPINION*

By the Court, GIBBONS, C.J.:

This appeal arises from a deceptive trade practices action. Appellant Derrick Poole sued respondents Nevada Auto Dealership Investments, LLC, and its surety company, Corepointe Insurance Company, under the Nevada Deceptive Trade Practices Act (NDTPA) and NRS 41.600 (consumer fraud). Poole alleged that Nevada Auto knowingly failed to disclose material facts about a truck that it sold to him and misrepresented the truck's condition. The district court granted summary judgment for respondents on each of Poole's claims.

In this opinion, we consider the meaning of "knowingly" and "material fact" under the NDTPA. These terms appear frequently throughout the NDTPA but remain undefined under the Act. We conclude that "knowingly" means that the defendant is aware that the facts exist that constitute the act or omission, and that a fact is "material" if either (a) a reasonable person would attach importance to its existence or nonexistence in determining a choice of action in the transaction in question; or (b) the defendant knows or has reason to know that the consumer regards or is likely to regard the matter as important in determining a choice of action, although a reasonable person may not so regard it. Using these definitions, we conclude that Poole presented sufficient evidence to raise genuine issues of material fact[1] under each of his claims, and thus that the district court

---

[1]Our dual usage of the term "material fact" is unavoidable in this case. The first usage is that of the summary judgment standard under *Wood v. Safeway, Inc.*, 121 Nev. 724, 732, 121 P.3d 1026, 1031 (2005) (providing that summary judgment is proper when "no genuine issue of material fact remains"); the second is that of NRS 598.0923(2) (enumerating "[f]ail[ure] to disclose a material fact" as a deceptive trade practice).

 

erred in granting summary judgment. We therefore reverse the district court's order granting summary judgment and remand this matter to the district court for further proceedings consistent with this opinion.

## BACKGROUND

Poole purchased a certified pre-owned (CPO) Dodge truck from Nevada Auto. Nevada Auto advertises that "CPO vehicles must pass a stringent certification process that guarantees only the finest late model vehicles get certified." The truck's previous owner had been in an accident and repaired the truck before selling it to Nevada Auto. The previous owner's insurer, Allstate, prepared an Allstate Collision Estimate (ACE) listing each replaced or repaired part. The ACE listed damage to the truck's frame, and a "reconditioned" replacement for a damaged wheel. Despite its knowledge of the damage that the ACE described, Nevada Auto certified the truck as a CPO vehicle.

Poole test-drove the truck with a Nevada Auto salesperson who told him that the truck had been in a "minor" collision. When Poole asked about the extent of the damage from the collision, the salesperson repeated that it was only minor and explained that Nevada Auto would not sell the truck were the collision significant. Nevada Auto also disclosed the collision by providing a Carfax report to Poole. The Carfax report did not reveal the frame damage, the reconditioned wheel, or the cost of repairs, and Nevada Auto did not disclose to Poole the ACE's contents or even its existence. Two years later, Poole learned the extent of the damage when he tried to refinance the loan on the truck. The lender explained to Poole that it had declined his loan application because it discovered that the collision had damaged the truck's frame and significantly reduced its value.

Poole sued Nevada Auto and Corepointe,[2] alleging violations of several deceptive trade practice statutes under the NDTPA, codified in NRS Chapter 598, and seeking equitable relief for consumer fraud under NRS 41.600. Respondents moved for summary judgment, arguing that no genuine issues of material fact existed under Poole's deceptive trade practices claims. After a hearing on the motion, the district court granted summary judgment, concluding that each of Poole's deceptive trade practices claims failed, and thus that his equitable claims likewise failed.

*ANALYSIS*

Poole appeals, arguing that the district court erred by determining that no genuine issue of material fact existed as to whether Nevada Auto knowingly (1) failed to disclose a material fact under NRS 598.0923(2); (2) misrepresented the truck's certification under NRS 598.0915(2) or its certified standard, quality, or grade under NRS 598.0915(7); (3) made a false representation under NRS 598.0915(15); or (4) misrepresented the truck's mechanical condition under the Federal Trade Commission Act (FTCA), 16 C.F.R. § 455.1(a)(1) (2018), in violation of NRS 598.0923(3). Respondents answer that no genuine issue of material fact remains because Nevada Auto disclosed all material facts, properly certified the truck, and in any case, did not "inten[d] to knowingly defraud" Poole.

---

[2]Poole sued Corepointe, Nevada Auto's surety company, under NRS 482.345(7)(a)(1), which provides that "[i]f the court enters . . . [a] judgment on the merits against the dealer . . . , the judgment is binding on the surety." He notes that respondents disputed his claim against Corepointe in their motion for summary judgment and asks this court to "dispose of this" issue. Because the district court did not address Corepointe's liability, however, we decline to do so in the first instance. *See, e.g., Douglas Disposal, Inc. v. Wee Haul, LLC*, 123 Nev. 552, 557 n.6, 170 P.3d 508, 512 n.6 (2007) (declining to address an argument that the district court did not address).

As Poole notes, however, the NDTPA does not define "knowingly" or "material," and the district court did not define them in granting summary judgment. The Nevada Supreme Court, too, has not addressed either NDTPA term, and respondents offer little guidance. Because the application of these terms is essential in this case and in many other deceptive trade practices actions, we take this opportunity to address each term's meaning under the NDTPA.

"We review questions of statutory meaning de novo." *Knickmeyer v. State*, 133 Nev. 675, 679, 408 P.3d 161, 166 (Ct. App. 2017). The primary goal of interpreting statutes is to effectuate the Legislature's intent. *Cromer v. Wilson*, 126 Nev. 106, 109, 225 P.3d 788, 790 (2010). We interpret clear and unambiguous statutes based on their plain meaning. *Id.* When a statute "is susceptible to more than one natural or honest interpretation, it is ambiguous, and the plain meaning rule has no application." *State, Dep't of Bus. & Indus. v. Granite Constr. Co.*, 118 Nev. 83, 87, 40 P.3d 423, 426 (2002). "[W]hen a statute is ambiguous, we consult other sources, such as legislative history, reason, and policy to identify and give effect to the Legislature's intent." *In re CityCenter Constr. & Lien Master Litig.*, 129 Nev. 669, 673-74, 310 P.3d 574, 578 (2013). "When a legislature adopts language that has a particular meaning or history, rules of statutory construction also indicate that a court may presume that the legislature intended the language to have meaning consistent with previous interpretations of the language." *Beazer Homes Nev., Inc. v. Eighth Judicial Dist. Court*, 120 Nev. 575, 580-81, 97 P.3d 1132, 1135-36 (2004).

*The meaning of "knowingly" under the NDTPA*

Respondents argue that Poole presented no evidence that Nevada Auto "inten[ded] to knowingly defraud" him. Poole replies that he

did present such evidence, but that under the NDTPA, "knowingly" means only general intent—not intent to deceive, but mere knowledge of the facts that constitute the act or omission.

Poole directs this court to several civil and criminal Nevada statutes that define "knowingly" in similar contexts, two of which predate the NDTPA's passage in 1973. For example, NRS Chapter 624, which addresses licensing and discipline of contractors, provides in NRS 624.024, codified in 2003, that

> "Knowingly" imports a knowledge that the facts exist [that] constitute the act or omission, and does not require knowledge of the prohibition against the act or omission. Knowledge of any particular fact may be inferred from the knowledge of such other facts as should put an ordinarily prudent person upon inquiry.

Each of the statutes defines "knowingly" in nearly identical language and requires no more than general intent. *See also* NRS 193.017 (addressing crimes and punishments, and first codified in 1912); NRS 208.055 (addressing correctional institutions and aid to victims of crime, and first codified in 1912); NRS 281A.115 (addressing ethics in government, and first codified in 2009); *Bolden v. State*, 121 Nev. 908, 923, 124 P.3d 191, 201 (2005) ("General intent is 'the intent to do that which the law prohibits.'" (quoting *Black's Law Dictionary* 810 (6th ed. 1990))), *receded from on other grounds by Cortinas v. State*, 124 Nev. 1013, 1026-27, 195 P.3d 315, 324 (2008).

The above definition of "knowingly" best effectuates the Legislature's intent under the NDTPA. The Legislature has used "knowingly" as a term of art and defined it consistently elsewhere in the Nevada Revised Statutes, and thus presumably intended to use it consistently under the NDTPA. *See NAIW v. Nev. Self-Insurers Ass'n*, 126

COURT OF APPEALS
OF
NEVADA

(O) 1947B

6

Nev. 74, 84, 225 P.3d 1265, 1271 (2010) ("We presume that the Legislature enact[s a new] statute with full knowledge of existing statutes relating to the same subject."); *cf. Beazer*, 120 Nev. at 587, 97 P.3d at 1139-40 ("Generally, when a legislature uses a term of art in a statute, it does so with full knowledge of how that term has been interpreted in the past, and it is presumed that the legislature intended it to be interpreted in the same fashion."); *see also State v. Hagan*, 387 So. 2d 943, 945 (Fla. 1980) ("In the absence of a statutory definition, resort may be had to case law or related statutory provisions [that] define the term . . . ."); *Nelson v. Transamerica Ins. Servs.*, 495 N.W.2d 370, 373 n.18 (Mich. 1992) ("The Legislature is presumed to be aware of existing statutes."). Each of those statutes in which the Legislature has defined "knowingly" is part of a statutory scheme with a purpose similar to that of a consumer protection act—protecting and assisting the public. *See, e.g.*, NRS 624.005 ("[T]he provisions of this chapter . . . are intended to . . . protect the health, safety and welfare of the public."); NRS 217.010 ("[T]he policy of this State [is] to provide assistance to . . . victims of violent crimes . . . ."); *see also Thomas v. Sun Furniture & Appliance Co.*, 399 N.E.2d 567, 570 (Ohio Ct. App. 1978) (The purpose of Ohio's deceptive trade practices act "was to give the consumer protection from a supplier's deceptions which he lacked under the common law requirement of proof of an intent to deceive in order to establish fraud.").

We therefore conclude that a "knowing[ ]" act or omission under the NDTPA does not require that the defendant intend to deceive with the act or omission, or even know of the prohibition against the act or omission, but simply that the defendant is aware that the facts exist that constitute the act or omission. For example, a defendant auto dealer "knowingly" makes a false representation of a car's condition to a plaintiff consumer if

the car has been damaged in a collision and the dealer is aware that it represented to the consumer that the car has never been damaged in a collision. "[K]nowingly" does not require that the dealer intended to deceive the consumer or knew of such a misrepresentation's prohibition—the defendant must simply be aware of the fact that it represented that the car had never been damaged in a collision. *See* NRS 598.0915(15) ("*Knowingly mak[ing]* any other false representations in a transaction" is a deceptive trade practice. (Emphasis added)).

We also find support for our conclusion in the statutory interpretive canon *expressio unius est exclusio alterius*, "the expression of one thing is the exclusion of another," *Galloway v. Truesdell*, 83 Nev. 13, 26, 422 P.2d 237, 246 (1967). As Poole notes, NRS 598.0915 includes both "knowingly" and specific intent elements, *compare* NRS 598.0915(1) ("Knowingly passes off goods or services for sale or lease as those of another person."), *with* NRS 598.0915(9) ("Advertises goods or services with intent not to sell or lease them as advertised."). This implies that the Legislature deliberately omitted any further intent requirement from those subsections that require only knowing acts. In light of the Legislature's inclusion of specific intent elements in some statutes and subsections and omission from others, the NDTPA provisions that include "knowing[]" acts but lack a specific intent element require only knowledge that the facts exist that constitute the act or omission. *See Galloway*, 83 Nev. at 26, 422 P.2d at 246 (noting that *expressio unius est exclusio alterius* "has been repeatedly confirmed in this State"); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012) ("[A] material variation in terms suggests a variation in meaning."); *see generally Sheriff, Pershing Cty. v. Andrews*, 128 Nev. 544, 548, 286 P.3d 262, 264 (2012)

COURT OF APPEALS
OF
NEVADA

(O) 1947B

8

(reasoning that where the Legislature "clearly knows how to prohibit" an act under one statute and does not prohibit it under a second statute, the Legislature did not intend to prohibit it under the second statute).

Our review of other jurisdictions that have addressed the meaning of "knowingly" in similar statutes also supports our conclusion. Kansas, New Mexico, and Ohio require "knowing[ ]" acts or omissions under their respective deceptive trade practices acts. *E.g.*, Kan. Stat. Ann. § 50-626(b)(1) (2005) (defining deceptive trade practices to include "[r]epresentations made knowingly or with reason to know"); N.M. Stat. Ann. § 57-12-2(D)(14) (LexisNexis 2010) (defining deceptive trades practices to include "knowingly . . . failing to state a material fact"); Ohio Rev. Code Ann. § 1345.09(F)(2) (LexisNexis 2018) (providing that a prevailing complainant may recover attorney fees when "[t]he supplier has knowingly committed" a deceptive trade practice). Courts in each state have likewise concluded that those statutes do not require intent to deceive or knowledge of the act's or omission's prohibition. *Moore v. Bird Eng'g Co.*, 41 P.3d 755, 764 (Kan. 2002) ("knowingly or with reason to know" does not require intent to deceive); *Richardson Ford Sales, Inc. v. Johnson*, 676 P.2d 1344, 1347-48 (N.M. Ct. App. 1984) ("A knowing nondisclosure requires [only] an awareness of the nondisclosure."); *Einhorn v. Ford Motor Co.*, 548 N.E.2d 933, 936 (Ohio 1990) ("knowingly" requires only that the supplier "intentionally do the [violative] act").

Similarly, Utah's Consumer Sale Practices Act distinguishes knowing from intent to deceive and awareness of an act's or omission's prohibition by requiring *either* "knowing[ ] or intentional[ ]" acts. Utah Code Ann. § 13-11-4(2) (LexisNexis 2009). The Utah Legislature has amended the Act twice—the first time to include an intent element by adding "intent

COURT OF APPEALS
OF
NEVADA

(O) 1947B

to deceive," and the second time to replace "with intent to deceive" with "knowingly or intentionally." *Martinez v. Best Buy Co., Inc.*, 283 P.3d 521, 523 n.2 (Utah Ct. App. 2012). Although Utah courts have not yet addressed the meaning of "knowingly" under the Act, the Utah Legislature's amendments further support our conclusion that "knowing[ ]" acts do not require intent to deceive.

Colorado and New Jersey courts, however, have concluded otherwise. Under Colorado's Consumer Protection Act, deceptive trade practices include "[e]ither knowingly or recklessly mak[ing] a false representation," Colo. Rev. Stat. Ann. § 6-1-105(1)(b) (West 2019), and the Colorado Supreme Court held that a "knowingly" false representation under the Act requires an intent to defraud. *Crowe v. Tull*, 126 P.3d 196, 204 (Colo. 2006). Similarly, the New Jersey Supreme Court held that a "knowing[ ] . . . omission . . . of any material fact" under New Jersey's Consumer Fraud Act requires intent to commit a violative omission. *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 461-62 (N.J. 1994) (quoting N.J. Stat. Ann. § 56:8-2 (West 2012)).

Alaska, Tennessee, and Texas have also defined "knowingly" otherwise. Each state's deceptive trade practices act requires "knowing[ ]" acts or omissions, *e.g.*, Alaska Stat. § 45.50.471(b)(12) (2018) (defining deceptive trade practices to include "knowingly concealing, suppressing, or omitting a material fact"); Tenn. Code Ann. § 47-18-109(a)(3) (2013) (providing that a court may award treble damages for a "knowing violation"); Tex. Bus. & Com. Code Ann. § 17.46(b)(13) (West 2011) (defining deceptive trade practices to include "knowingly making false or misleading statements"), and defines "knowingly" to require awareness not of the act, but of the falsity or deception, Alaska Stat. § 45.50.561(11) (2018)

("'[K]nowingly' means actual awareness of the falsity or deception . . . ."); Tenn. Code Ann. § 47-18-103(10) (2013) ("'Knowingly' or 'knowing' means actual awareness of the falsity or deception . . . ."); Tex. Bus. & Com. Code Ann. § 17.45(9) (West 2011) ("'Knowingly' means actual awareness . . . of the falsity, deception, or unfairness . . . .").

We conclude, however, that our interpretation better serves the NDTPA's remedial purpose. Because the NDTPA is a remedial statutory scheme, *Sellinger v. Freeway Mobile Home Sales, Inc.*, 521 P.2d 1119, 1122 (Ariz. 1974) (recognizing that remedial statutes are those that "are designed to redress existing grievances and introduce regulations conducive to the public good"), we "afford[ ] [it] liberal construction to accomplish its beneficial intent," *see Welfare Div. of State Dep't of Health, Welfare & Rehab. v. Washoe Cty. Welfare Dep't*, 88 Nev. 635, 637, 503 P.2d 457, 458 (1972) (construing a remedial public welfare statute liberally to accomplish its intent). Interpreting "knowingly" to require more than general intent would render NDTPA and common law fraud claims redundant, *see Bulbman, Inc. v. Nev. Bell*, 108 Nev. 105, 110-11, 825 P.2d 588, 592 (1992) (listing "knowledge or belief that the representation is false" and intent to deceive as elements of a common law fraud claim), disserve the NDTPA's remedial purpose, and discourage claims by forcing parties to clear a significantly higher bar. *Cf. Betsinger v. D.R. Horton, Inc.*, 126 Nev. 162, 166, 232 P.3d 433, 436 (2010) ("Statutory offenses that sound in fraud are separate and distinct from common law fraud. Therefore, we conclude that deceptive trade practices, as defined under NRS Chapter 598, must only be proven by a preponderance of the evidence."); *see also United States v. Krohn*, 573 F.2d 1382, 1386-87 (10th Cir. 1978) (recognizing the difficulty of proving fraudulent intent); *Thomas*, 399 N.E.2d at 570 (The purpose of

Ohio's deceptive trade practices act "was to give the consumer protection from a supplier's deceptions which he lacked under the common law requirement of proof of an intent to deceive in order to establish fraud. To require proof of intent would effectively emasculate the act and contradict its fundamental purpose."); *Einhorn*, 548 N.E.2d at 935-36 (concluding that interpreting "knowingly" to require knowledge of the act's or omission's prohibition would "take[ ] the teeth out of" Ohio's deceptive trade practices act, "is inapposite to" its remedial purpose, and would discourage consumers from suing under the act).

*The meaning of "material fact" under the NDTPA*

NRS 598.0923(2) provides that a seller who "[f]ails to disclose a material fact" engages in a deceptive trade practice. Poole, citing an extensive array of caselaw across multiple jurisdictions, argues that a material fact is one that is reasonably relevant to the transaction and one to which a reasonable person would attach importance. Poole thus proposes an objective standard of materiality. Respondents answer that only the fact of the collision was material—not the extent of the damage—because Poole is, by his own admission, not "a car guy." Respondents thus implicitly propose a subjective standard. We conclude, however, that applying both the objective and subjective definitions best effectuates the Legislature's intent and is most consistent with the NDTPA.

Nevada law generally directs us to the definition of "material fact" in the Second Restatement of Torts:

The matter is material if

(a) a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question; or

> (b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it.[3]

§ 538(2) (Am. Law Inst. 1977). The Nevada civil pattern jury instructions, for instance, adopt subsection (a)'s objective "attach importance" language. Nevada Jury Instructions: Civil § 11.19 (State Bar of Nevada 2018) (addressing "material misrepresentation . . . in [an] application for insurance or the claims process"). Instruction 11.19 provides that "[a] fact is material if it concerns a subject reasonably relevant . . . and if a reasonable person would attach importance to that fact." Further, the Nevada Supreme Court applied subsection (a)'s objective standard in *Winn v. Sunrise Hospital & Medical Center*, a professional negligence case in which the court considered whether a hospital withheld material information and thus tolled the applicable statute of limitations. 128 Nev. 246, 255, 277 P.3d 458, 464 (2012).

A subjectively material fact under subsection (b) of the Second Restatement may be no less important to a buyer in some special circumstances than an objectively material fact, however, and applying a subjective standard of materiality is consistent with the NDTPA's

---

[3]Subsection (b) does not address failure to disclose, but its affirmative opposite—representation. Nevertheless, we hold that failure to disclose a fact is equivalent to affirmative representation of that fact's nonexistence. *See Ollerman v. O'Rourke Co.*, 288 N.W.2d 95, 100 (Wis. 1980) ("If there is a duty to disclose a fact, failure to disclose that fact is treated in the law as equivalent to a representation of the non existence of the fact."). We thus interpret subsection (b) to apply to failure to disclose material facts as well as affirmative misrepresentations thereof.

legislative purpose to protect consumers.[4] *See Washoe Cty. Welfare Dep't*, 88 Nev. at 637, 503 P.2d at 458 (holding that remedial legislation "should be afforded liberal construction to accomplish its beneficial intent"); *see also* Restatement (Second) of Torts § 538(2) cmt. f (Am. Law Inst. 1977) ("There are many persons whose judgment, even in important transactions, is likely to be determined by considerations that the normal man would regard as altogether trivial or even ridiculous. One who practices upon another's known idiosyncracies cannot complain if he is held liable when he is successful . . . .").

Our approach is consistent with a majority of other jurisdictions that likewise look to the Second Restatement of Torts to define "material fact" in contexts similar to the NDTPA.

New Jersey and Tennessee use the objective subsection (a) and the subjective subsection (b) alike, *Mango v. Pierce-Coombs*, 851 A.2d 62, 69 (N.J. Super. Ct. App. Div. 2004) (applying subsections (a) and (b) in a claim under New Jersey's Consumer Fraud Act); *Odom v. Oliver*, 310 S.W.3d 344, 349 (Tenn. Ct. App. 2009) (applying subsections (a) and (b) in a fraudulent concealment claim), while Arizona has used subsection (a), *Caruthers v. Underhill*, 287 P.3d 807, 815 (Ariz. Ct. App. 2012) (applying subsection (a) in a fraudulent inducement claim). Several others simply use subsection

---

[4]For instance, if a buyer sought to purchase a used truck and preferred, for some purely idiosyncratic reason, that the truck had originally not been sold in California; the dealer knew or had reason to know of the buyer's preference and the truck's sales history; and the truck had in fact been sold in California, then the dealer must disclose that fact to the buyer under NRS 598.0923(2). Although a reasonable person may consider such a fact unimportant, the dealer knew or had reason to know that the idiosyncratic buyer considered the fact important to the decision to purchase the truck.

(a)'s "importance" standard without citing the Restatement, and without expressly rejecting subsection (b). *E.g., Weinstat v. Dentsply Int'l, Inc.*, 103 Cal. Rptr. 3d 614, 622 n.8 (Ct. App. 2010) (Under California's Unfair Competition Law, "[t]he question of materiality . . . is whether a reasonable person would attach importance to the representation or nondisclosure in deciding how to proceed in the particular transaction . . . ."); *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) (In a fraudulent misrepresentation claim, "[m]aterial means a reasonable person would attach importance to and would be induced to act on the information in determining his choice of actions in the transaction in question." (quoting *Smith v. KNC Optical, Inc.*, 296 S.W.3d 807, 812 (Tex. Ct. App. 2009)); *Inkel v. Pride Chevrolet-Pontiac, Inc.*, 945 A.2d 855, 859 (Vt. 2008) (Under Vermont's Consumer Fraud Act, a material fact is one that "a reasonable person would regard as important in making a decision.").

Ohio, however, uses a unique objective standard, *Davis v. Sun Ref. & Mktg. Co.*, 671 N.E.2d 1049, 1058 (Ohio Ct. App. 1996) (In a fraudulent concealment claim, a fact is material if it "would be likely, under the circumstances, to affect the conduct of a reasonable person with reference to the transaction in question."), while Illinois uses a combination of unique objective and subjective standards, *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E. 2d 584, 595 (Ill. 1996) (Under Illinois' Consumer Fraud Act, "[a] material fact exists where a buyer would have acted differently knowing the information, or if it concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase.").

Only a small minority of states uses a purely subjective standard, and none expressly reject an objective standard. *Briggs v. Am. Nat'l Prop. & Cas. Co.*, 209 P.3d 1181, 1186 (Colo. App. 2009) (Under the

Colorado Consumer Protection Act, "[u]ndisclosed facts are 'material' if the consumer's decision might have been different had the truth been disclosed."); *Casavant v. Norwegian Cruise Line, Ltd.*, 919 N.E.2d 165, 170 (Mass. App. Ct. 2009) ("To determine if the nondisclosure was of a material fact [in an unfair or deceptive act or practice claim], we ask whether the plaintiff likely would have acted differently but for the nondisclosure."); *Colaizzi v. Beck*, 895 A.2d 36, 39-40 (Pa. Super. Ct. 2006) (Under the Pennsylvania Consumer Protection Act, "a misrepresentation is material if it is of such character that if it had not been misrepresented, the transaction would not have been consummated."); *see also Carcano v. JBSS, LLC*, 684 S.E.2d 41, 53 (N.C. Ct. App. 2009) (In a fraud claim, "[a] fact is material if had it been known to the party, [it] would have influenced that party's decision in making the contract at all.").

We therefore conclude that applying both the objective and subjective definitions in the Second Restatement of Torts best effectuates the Legislature's intent and is most consistent with the NDTPA.

*Whether a genuine issue of material fact exists under Poole's NRS 598.0923(2) claim*

We review a district court's order granting summary judgment de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment is proper if the pleadings and all other evidence on file demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Id.; see also* NRCP 56. "[T]he evidence, and any reasonable inferences drawn from it, must be viewed in a light most favorable to the nonmoving party." *Wood*, 121 Nev. at 729, 121 P.3d at 1029. "A factual dispute is genuine when the evidence is such that a rational trier of fact could return a verdict for the nonmoving party." *Id.* at 731, 121 P.3d at 1031.

"A person engages in a 'deceptive trade practice' when, in the course of his or her business or occupation, he or she knowingly . . . [f]ails to disclose a material fact in connection with the sale or lease of goods or services." NRS 598.0923(2). Poole argues that a genuine issue of material fact exists as to whether Nevada Auto failed to disclose a material fact under NRS 598.0923(2). He argues that he offered evidence sufficient to raise a genuine factual dispute under this claim, including deposition testimony from three Nevada Auto employees.

Respondents answer that disclosure of the fact of the collision was sufficient under NRS 598.0923(2), and that more specific information about the damage from the collision would have been irrelevant and immaterial because Poole, by his own admission, is not "a car guy." They argue that construing NRS 598.0923(2) to require a dealer to disclose as facts material to the sale "each and every nut and/or bolt, which may have been repaired and/or replaced" would be "absurd." Respondents also argue that Poole presented no evidence that they "inten[ded] to knowingly defraud, misrepresent, or to otherwise omit 'material' information."

Respondents' "each and every nut and/or bolt" argument misstates Poole's argument and frames the issue as a false dilemma in which the district court must either (1) limit the scope of material facts to the single fact of the collision, as the district court did in its order, or (2) broaden the scope of material facts to an extent that requires an unconscionably burdensome and painstaking account of the damage from the collision. This ignores, of course, a vast intermediate territory in which the scope of material facts may exclude relatively useless ones, such as "each and every repaired bolt or penny spent," but include those to which a reasonable person may attach importance, such as the nature and extent of

the collision damage. Nonetheless, the district court found that "the material . . . fact is that the vehicle was in a prior accident"[5] and that "[t]he duty to disclose under NRS 598.0923 does not extend to the entire effect of the accident, such as a price breakdown of every part and service provided as listed in the ACE."

The district court also found that "[t]here is no indication in the record that [Poole] inquired about the parts and services used to repair the vehicle as provided in the ACE, and such information was then withheld."[6] The court concluded by finding that "[Poole] relied on the [CPO] report, which the undisputed evidence shows would only have notated frame damage if a repair, if any, was not up to standard."

This reasoning begs the question, however, by assuming that Nevada Auto's certification standards are interchangeable with the statute's materiality standard—that a fact immaterial to CPO status is perforce immaterial under NRS 598.0923(2). The district court appeared to reason that had the damage been material under the statute, the truck would have been "not up to [certification] standard," and the damage would

---

[5]Why the district court deemed the fact of the accident "the material fact" is unclear. NRS 598.0923(2) addresses "fail[ure] to disclose *a* material fact." (Emphasis added.) The indefinite article "a" implies an indefinite scope of potentially material facts. The district court appeared to limit that scope to a single material fact by using the definite article "the," which is inconsistent with the statute's plain language.

[6]Poole argues the district court misapprehended NRS 598.0923(2) when it found that he must have inquired about a fact before Nevada Auto assumed the duty to disclose it. Poole is correct—by its plain language, NRS 598.0923(2) does not require inquiry, but provides for an affirmative duty to disclose.

have been noted in the CPO report; and because the damage was not noted in the CPO report, it must not have been material. Thus, the court effectively replaced the legal standard that governs this issue—materiality under NRS 598.0923(2)—with Nevada Auto's self-imposed certification standards.[7] Such reasoning would allow a seller to determine the scope of its duty to disclose by dictating its own "certification" standards and prevail against an NRS 598.0923(2) claim simply by upholding those standards, however lax they may be. In Poole's words, this "establishe[s] a quasi-irrebuttable presumption." We agree, and we caution district courts against substituting a commercial certification standard for any legal standard.

Poole offered deposition testimony from himself and three Nevada Auto employees. In his own deposition, he testified that he asked the Nevada Auto salesperson about the collision and that the salesperson assured him that the collision was only "minor." Notably, two of Nevada Auto's own employees agreed with Poole that the nature and extent of the damage from a collision are as important to a buyer as the fact of the collision itself. The third testified that he "thoroughly reviewed" the ACE before purchasing the truck for Nevada Auto, suggesting that Nevada Auto considered the ACE's contents, which indicated the nature and extent of the damage, reasonably relevant to the truck's sale.

Viewed in a light most favorable to Poole, this evidence is such that a rational trier of fact could find that Nevada Auto failed to disclose a fact to which a reasonable person would attach importance in determining a choice of action in the transaction, such as the frame damage, and thus

---

[7]Despite abandoning the statutory standard for Nevada Auto's CPO standard, the district court declined to consider "[t]he sufficiency of the CPO inspection standards" because it was "not at issue."

that Nevada Auto failed to disclose an objectively material fact. Alternatively, a rational trier of fact could find that Nevada Auto knew or had reason to know that Poole would regard or was likely to regard the extent of the damage, for instance, as important in determining his choice of action, even if a reasonable person would not attach importance to it, and thus that Nevada Auto failed to disclose a subjectively material fact. In either case, a rational trier of fact could find that Nevada Auto knowingly failed to disclose a material fact because it knew that it did not disclose that fact. We therefore conclude that a genuine issue of material fact exists such that the district court erred by granting summary judgment on this claim.

*Whether a genuine issue of material fact exists under Poole's NRS 598.0915(2) and (7) claims*

"A person engages in a 'deceptive trade practice' if, in the course of his or her business or occupation, he or she . . . [k]nowingly makes a false representation as to the . . . certification of goods or services for sale or lease." NRS 598.0915(2), or "[r]epresents that goods . . . are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model," NRS 598.0915(7). Poole argues that a genuine issue of material fact exists under his claim that Nevada Auto knowingly made a false representation as to the truck's certification under NRS 598.0915(2), or misrepresented the truck's certified standard, quality, or grade under NRS 598.0915(7). He argues that he produced evidence that the extent of the damage from the collision precluded certification. including a declaration from an expert who inspected the truck and a statement from the Fiat Chrysler Automobiles (FCA) website indicating that the truck's repaired wheel may be inconsistent with certification standards. Respondents answer that Poole failed to produce evidence proving that the

truck's standard, quality, or grade was anything other than certified, that Nevada Auto did not inspect and certify the truck, or that Nevada Auto should not have certified it.

The district court concluded that because Nevada Auto certified the truck, "[Poole] cannot argue that [Nevada Auto] misrepresented that the vehicle was . . . certified, as it was. The sufficiency of the CPO inspection standards is not at issue for this argument, but rather that the vehicle was ultimately certified as pre-owned." We disagree. Poole did not argue that Nevada Auto *did not certify* the truck, but that Nevada Auto *should not have certified* the truck under the CPO standards, and thus made a false representation as to its certification and likewise misrepresented its standard, quality, or grade.

To prove that Nevada Auto should not have certified the truck, and thus violated NRS 598.0915(2) and NRS 598.0915(7) by doing so, Poole offered the ACE, an expert's declaration, and deposition testimony from the Nevada Auto mechanic who inspected the truck for certification purposes. The ACE indicates frame damage and lists a "reconditioned" wheel among the replacement parts. The expert opined that several of the truck's components remained misaligned after repair, and that the misaligned components, frame damage, and reconditioned wheel each should have precluded certification. The Nevada Auto mechanic testified that he could not recall whether he reviewed the ACE before inspecting the truck and confirmed the expert's opinion that frame damage precludes certification.

Viewed in a light most favorable to Poole, this evidence is such that a rational trier of fact could find that the certification was improper, and Nevada Auto knew that it certified the truck, and thus violated NRS 598.0915(2) by making a false representation as to the truck's certification

and NRS 598.0915(7) by misrepresenting the truck's standard, quality, or grade as a CPO vehicle. We therefore conclude that a genuine issue of material fact exists as to whether Nevada Auto violated NRS 598.0915(2) and NRS 598.0915(7), and thus that the district court erred by granting summary judgment on these claims.

*Whether a genuine issue of material fact exists under Poole's NRS 598.0915(15) claim*

Poole argues that a genuine issue of material fact exists as to whether Nevada Auto knowingly made any other false representation in a transaction under NRS 598.0915(15), which provides that "[a] person engages in a 'deceptive trade practice' if, in the course of his or her business or occupation, he or she . . . [k]nowingly makes any other false representation in a transaction." He argues that Nevada Auto "affirmatively mis[led]" him when, after Nevada Auto disclosed the fact of the collision, he asked about the collision and Nevada Auto answered that it was "minor." He notes that he offered several forms of evidence to prove that the collision was more than "minor," and that the district court did not address this issue in its order granting summary judgment.

Respondents answer that Poole failed to offer such evidence. They also argue that Poole "conceded" this issue by "neglecting this portion of the statute" in his opposition to their motion for summary judgment.[8]

Although the district court rendered summary judgment on all of Poole's claims, it did not expressly address this claim. We conclude, however, that a genuine issue of material fact exists here.

---

[8]Respondents cite no authority for the proposition that Poole somehow conceded the issue, and their underlying claim is inaccurate— Poole addressed the issue in his opposition to the motion for summary judgment by alleging that Nevada Auto violated NRS 598.0915(15).

To prove that Nevada Auto made a false representation when it characterized the collision as only "minor," Poole offered the ACE, his expert's declaration, and deposition testimony from Nevada Auto's mechanic. The ACE lists each repaired and replaced part and its cost, and the total cost of $4,088.77. The expert opined that the extent of the damage left the truck's value substantially diminished. The Nevada Auto mechanic testified that only the collision—not ordinary wear—could account for the frame repair listed in the ACE.

Viewed in a light most favorable to Poole, this evidence is such that a rational trier of fact could find that Nevada Auto made a false representation by describing the collision as "minor," and did so knowingly because it knew that it gave the description. We therefore conclude that a genuine issue of material fact exists, and thus that the district court erred by granting summary judgment on this claim.

*Whether a genuine issue of material fact exists under Poole's 16 C.F.R. § 455.1(a)(1) claim*

"It is a deceptive act or practice for any used vehicle dealer, when that dealer sells or offers for sale a used vehicle in or affecting commerce . . . [t]o misrepresent the mechanical condition of a used vehicle[.]" 16 C.F.R. § 455.1(a)(1). The FTCA, including 16 C.F.R. § 455.1(a)(1), does not provide a private cause of action. *See Dreisbach v. Murphy*, 658 F.2d 720, 730 (9th Cir. 1981) (explaining that the FTCA confers remedial power solely on the Federal Trade Commission). As Poole notes, however, the NDTPA provides a private cause of action for an FTCA violation. *See* NRS 598.0923(3) ("A person engages in a 'deceptive trade practice' when in the course of his or her business or occupation he or she knowingly . . . [v]iolates a state or federal statute or regulation relating to the sale or lease of goods or services.").

 

Poole argues that a genuine issue of material fact exists as to whether Nevada Auto misrepresented the truck's mechanical condition under 16 C.F.R. § 455.1(a)(1). He refers to the evidence that he offered for his claims under NRS 598.0915(2), (7), and (15). Respondents answer that he failed to offer any such evidence. Like Poole's NRS 598.0915(15) claim, the district court did not expressly address this claim. Again, however, we conclude that a genuine issue of material fact exists.

To prove that Nevada Auto misrepresented the truck's mechanical condition, Poole offered the ACE, the expert's declaration, and an FCA statement regarding the dangers of reconditioned wheels. The ACE lists a reconditioned wheel among the replacement parts. The expert opined that Nevada Auto should not have certified the truck because of the reconditioned wheel and misaligned components. The FCA position statement on reconditioned wheel usage confirms that reconditioned wheels are "not recommend[ed]" for use because the repairs "may alter mechanical properties" and "result in a sudden catastrophic wheel failure."

Viewed in a light most favorable to Poole, this evidence is such that a rational trier of fact could find that Nevada Auto misrepresented the truck's mechanical condition by certifying it despite mechanical conditions that preclude certification, and did so knowingly because it knew that it certified the truck despite those conditions. We therefore conclude that a genuine issue of material fact exists, and thus that the district court erred by granting summary judgment on this claim.

## CONCLUSION

Because genuine issues of material fact exist as to each of Poole's statutory claims, we reverse the district court's order granting

COURT OF APPEALS
OF
NEVADA

(O) 1947B

summary judgment in its entirety.[9]  Accordingly, we remand this case to the district court for further proceedings consistent with this opinion.

_____, C.J.
Gibbons

We concur:

_____, J.
Tao

_____, J.
Bulla

---

[9]The district court also summarily disposed of Poole's equitable claims, finding that because it granted summary judgment for respondents on each of Poole's statutory claims, "there are no grounds to grant equitable relief." We note that our reversal of summary judgment reinstates Poole's equitable relief claims.

Further, the district court granted summary judgment in favor of Corepointe because it dismissed the claims against Nevada Auto. Because we reverse the district court's order granting summary judgment for Nevada Auto, we also reverse the order dismissing Poole's claims against Corepointe. The district court should also reexamine the award of attorney fees to respondents.

COURT OF APPEALS
OF
NEVADA

(O) 1947B